[No. 24785. En Banc. May 31, 1934.]

E. L. CHAMPLIN, *Respondent*, v. TRANSPORT MOTOR
COMPANY, *Appellant*.[1]

*Lund & Dodds,* for appellant.

*Edward M. Connelly,* for respondent.

HOLCOMB, J.—Respondent sued for damages for failure of appellant to "save him harmless" in an automobile deal.

From about January 5, 1932, respondent was employed as an automobile salesman by appellant, which is a corporation having its principal place of business in Spokane, Washington. At that time, respondent

[1]Reported in 33 P. (2d) 82.

was the owner of an Oakland automobile in good condition, which he had used in calling upon prospects in the business of appellant, and likewise for family use. Owing to the almost total collapse of business generally in the automobile business in and around Spokane in 1932, appellant's business was nearly at a standstill.

In March, 1932, one E. P. Olson was undisputedly the sales-manager of appellant, and one Johnson was its manager. Olson had held that position for thirteen years, and had been vice-president. In that month, Olson informed all sales agents of appellant that the manager had instructed him that, in order to secure several thousand dollars in cash from a financial company, all salesmen employed by appellant would be required to purchase new automobiles from appellant to be used as demonstrators, or, in the alternative, to be discharged from employment; and would be further required to sign a conditional sales contract covering the period of six months, and outlining terms of sale and purchase which would render possible the sale of such contracts to the finance company of appellant for cash.

After about two weeks discussion and negotiation, although respondent was in no financial condition to buy such a car, he was finally induced to do so by Olson, upon the conditional sales contract plan.

It was specifically agreed between respondent and Olson that respondent, in order to hold his position as salesman, would take delivery of a new Hupmobile automobile from appellant, signing a conditional sales contract therefor which provided in terms that four hundred dollars cash had been paid down on the Hupmobile, and that forty dollars was to be paid monthly for six months thereafter, at the end of which time $783 was to be paid, which indebtedness was evidenced

by the separate note of respondent. It was also agreed between them that appellant would save respondent harmless from any money loss on the car; that they would take in his Oakland automobile as part payment at an agreed price of six hundred and fifty dollars, crediting four hundred dollars as a down payment and the balance to cover the monthly installments for six months. It was never intended that respondent should pay the note for $783, as he was not in a financial position to be able to do so. He was, however, prohibited from selling the new car during the six months period. At the end of that time, he was to be permitted to sell it, and if unable to do so, appellant, through its sales manager, Olson, agreed to take the car, clean and polish it, place it on the sales floor and sell it for the best price obtainable, probably the dealer's price, which was $1,250.

Respondent was discharged a few days before the expiration of the six months period, and being unable to pay the $783 note then due upon the Hupmobile, the finance company repossessed it from him and turned it over to appellant immediately, by whom it was sold to a third person. Respondent had, therefore, lost his Oakland car under an agreement which he disliked to enter into in the first place, and had finally been induced to do so only upon the promise and condition that he would be saved financially harmless from any loss whatsoever in the purchase of the Hupmobile.

The foregoing facts are uncontradicted. The only contradiction offered by appellant is that of the written conditional sales contract, which, among other things, contains the following clause:

"No warranties, representations or agreements have been made by the seller unless specifically set forth herein."

Appellant also introduced testimony tending to contradict testimony offered by respondent as to the value of the car at the time of repossession.

After a trial to the court without a jury, it found in favor of respondent, fixing his damages at five hundred dollars, and entered judgment accordingly.

At the conclusion of the opening statement of counsel for respondent, appellant objected to the introduction of any evidence in support of the amended complaint and moved to dismiss the action, which were denied.

The chief contention of appellant is that the trial court erred in allowing the parol evidence, in that it alters the written contract heretofore mentioned and violates the parol evidence rule. In furtherance of this contention, appellant also contends that the trial court refused to make a finding of fraud, mistake, or intimidation, so that this case cannot rest upon the ground of fraud inducing the contract.

It is true that the trial court said that there was no fraud or intimidation, and no such words were used in the amended complaint of respondent, which is unimportant.

The amended complaint was founded upon the collateral oral agreement between the parties, based upon adequate consideration, which was the inducement for the written contract of sale of the Hupmobile car.

"The rule admitting parol evidence of a collateral agreement is especially applicable where such agreement constituted a part of the consideration of the written agreement, or operated as an inducement for entering into it, . . . It has also been held that, where, at the time of executing a writing, a stipulation has been entered into, a condition annexed, or a promise made by word of mouth, on the faith of which the writing has been executed, parol evidence of such mat-

ters is admissible even though it may vary or materially change the terms of the contract; and in such case it is not necessary to allege that the agreement was left out of the contract through fraud, accident, or mistake." 22 C. J. 1253.

To the same effect is *Gordon v. Parke & Lacy Machinery Co.*, 10 Wash. 18, 38 Pac. 755.

The subject matter of the alleged oral agreement not being the same as that of the written contract, the oral contract was enforcible whether made before, contemporaneous with, or after the written contract. *Bayers v. Barry,* 114 Wash. 252, 194 Pac. 993.

In *Producers Grocery Co. v. Blackwell Motor Co.,* 123 Wash. 144, 212 Pac. 154, where there was a provision in the conditional sales contract that the seller "would not be bound by any understandings, agreements or representations, express or implied, not specified therein," just as in this case, it was held that evidence of fraudulent representation made by an agent to induce the sale of a secondhand truck was not inadmissible as varying the terms of the written contract. To the same effect are *Holcomb & Hoke Mfg. Co. v. Auto Interurban Co.,* 140 Wash. 581, 250 Pac. 34, 51 A. L. R. 39; *Jacquot v. Farmers Straw Gas Producer Co.,* 140 Wash. 482, 249 Pac. 984; *Stanley v. Parsons,* 156 Wash. 217, 286 Pac. 654.

As in *Stanley v. Parsons,* in such a case as this, it must be held to be constructive fraud, and since the results in the eyes of the law to the injured party were the same, the relief must also be the same. There was here undoubted business compulsion exerted upon respondent, compelling him to enter into both contracts.

Cases cited by appellant, without reviewing them specifically, *Buffalo Pitts Co. v. Shriner,* 41 Wash. 146, 82 Pac. 1016; *Gilbert Co. v. Husted,* 50 Wash. 61, 96 Pac. 835; *Farley v. Letterman,* 87 Wash. 641, 152 Pac.

515; *Van Doren Roofing & Cornice Co. v. Guardian Casualty & Guaranty Co.,* 99 Wash. 68, 168 Pac. 1124; *Farmers State Bank of Newport v. Lamon,* 132 Wash. 369, 231 Pac. 952, 42 A. L. R. 1072; *Asbury v. Yakima Milling Co.,* 137 Wash. 203, 242 Pac. 362; *O'Neil v. Washelli Cemetery Association,* 138 Wash. 566, 244 Pac. 990; *Peterson v. Hansen,* 145 Wash. 582, 260 Pac. 1074, were all governed by widely different principles of law and upon different facts than the instant case.

In one case cited by appellant, *Titan Truck Co. v. Richardson,* 122 Wash. 452, 210 Pac. 790, we held that case to be distinguished from other cases which hold that express warranties must be found in the written instrument which was freely executed by the parties and cannot be added to, or varied, by parol testimony as to any preceding negotiations, as in those cases there was no question but what a complete, voluntary, written contract existed between the parties, while there, the whole contention was that the contract was entirely in parol.

While the conditional sales contract in this case was in writing, the contract relied upon by appellant was in parol, which, although it referred to the conditional sales contract, rendered the whole contract parol.

It is contended also that there was no proof of the amount of damages allowed by the trial court to respondent. While there is some variance in the testimony, we consider the allowance of five hundred dollars to respondent as damages was well within the range of the testimony as to such damages.

The judgment is affirmed.

MITCHELL and GERAGHTY, JJ., concur.

BEALS, C. J., and TOLMAN, J., concur in the result.

BLAKE, J. (dissenting)—March 19, 1932, the plaintiff bought from defendant a Hupmobile. The parties exe-

cuted a conditional bill of sale containing the following stipulation:

"No warranties, representations or agreements have been made by the seller unless specifically set forth herein."

The contract recited a cash payment of four hundred dollars (which it is conceded was made as an allowance on an old car traded in), and provided for six monthly payments of forty dollars each. The balance, $783.56, was due and payable November 1, 1932.

Shortly after its execution, the defendant sold its interest in the contract to Commercial Credit Company. On November 21st, plaintiff having failed to pay the balance of the purchase price, as provided in the contract, Commercial Credit Company repossessed the car. Thereafter, plaintiff commenced this action for damages against defendant, alleging:

"That plaintiff was induced and intimidated and compelled to enter this contract, first, by representations of E. P. Olson, defendant's agent, that his connections with the defendant corporation would be immediately severed unless he entered the agreement; second, that the defendant corporation would assist plaintiff to resell the car on or before September 1, 1932, and that they would save him harmless from any monetary loss arising from the purchase aforesaid."

Plaintiff, testifying in support of those allegations, said that he had entered the employ of defendant as a salesman on January 5, 1932; that the term of his employment was indefinite; that his compensation was to be ten per cent on gross sales made by him, less freight; that, about two weeks prior to March 19th, the manager of defendant informed him that, in order to hold his job, he would have to buy a new car; that he did not want to buy a new car, but, in order to hold his job, he entered into the contract of March 19th, upon the as-

surance that defendant "would save him harmless from any monetary loss arising from the purchase" of the new car. All of these alleged representations and promises were made prior to the execution of the written contract. Plaintiff took possession of the car and drove it more than six thousand miles prior to the time it was repossessed by Commercial Credit Company.

The trial court, in a memorandum opinion, said:

"Plaintiff was not compelled to buy. He acted as a free agent, actuated no doubt by the promises above mentioned. There was no false representation of any existing or past fact made by defendant's agent in reliance upon which plaintiff bought the car."

Nevertheless, it entered judgment for plaintiff in the sum of five hundred dollars. The majority of this court now sustains that judgment. This holding, I believe to be utterly without precedent and without reason. The effect of the holding is simply this: The rights of the vendor and the obligations of the vendee under a written contract are, in the absence of fraud, accident, mistake or duress, completely ignored and held for naught. Not only that—obligations are imposed on the vendor and rights are conferred on the vendee under a *prior oral contract* covering exactly the same subject matter. In other words, the court refuses to enforce the obligation of the vendee under the written contract to purchase the car, and at the same time imposes on the vendor an obligation (in substance) to buy it back under a *prior oral* contract.

The justification for this abandonment of fundamental principles of the law of evidence and contract is "business compulsion." Until recently, unambiguous contracts could be enforced, in the absence of fraud, accident, mistake or duress. There is now in the course of development something that is neither fraud, accident, nor mistake, and which falls short of

duress, whereby courts are disposed to relieve persons of plain and unambiguous obligations arising under contracts. It is this thing called "business compulsion." It has not reached a stage of development where it is subject to definition.

Until now, I had supposed that "business compulsion" existed only in cases where a party to a contract failed to assert an existing right because of fear of injury from the threatened summary exercise of illegal power held over him by the other party to the contract. But now the majority extends the doctrine to relieve the plaintiff of obligations under a written contract which, in entering into, he had *no existing right* to protect. For he testified that his employment was not for a fixed term. Furthermore, as a matter of law, his employment could have been terminated at any time by the corporation, even though by its terms, it had been for a definite time. *Williams v. Great Northern Ry. Co.*, 108 Wash. 344, 184 Pac. 340; *Hansen v. Stirrat & Goetz Investment Co.*, 144 Wash. 118, 256 Pac. 1033. In other words, plaintiff, in executing the written contract, did not forego the assertion of any existing right. The defendant had the right to discharge him, and he had the right to quit.

Business compulsion may, in the course of development, become a salutary instrumentality for justice. It cannot become such, as applied in this case. Here it serves quite the opposite purpose, in that it undermines the stability of written contracts, and completely abrogates the parol evidence rule.

MAIN, MILLARD, and STEINERT, JJ., concur with BLAKE, J.