[No. 34158. *En Banc.* April 30, 1959.]

E. R. NAILOR *et al., Respondents,* v. WESTERN MORTGAGE COMPANY *et al., Appellants.*[1]

[1]Reported in 338 P. (2d) 737.

*Lundin, Barto & Goucher,* for appellants.

*Joseph H. Johnston, Nathan G. Richardson,* and *W. A. Raley,* for respondents.

WEAVER, C. J.—Separate actions brought by plaintiffs were consolidated for jury trial and upon appeal. Defendants appeal from money judgments entered after verdicts of the jury against them.

The court instructed that

"The gist of the various Plaintiffs' actions against the Defendants is an alleged conspiracy between the Defendants and one Wayne Williams to defraud and to cheat the Plaintiffs."

Wayne Williams, a contractor and builder, became indebted to plaintiffs for materials. Williams is not a party to these actions, which sound in tort for damages arising out of false representations made by defendants and by Williams concerning his financial status. The defendants authorized Williams to make the misrepresentations to the plaintiffs; hence, their liability for the damages suffered by reason of the reliance placed upon them.

The defendants are the Western Mortgage Company, a corporation, and its president, Gifford P. Owen, who wrote

the following letter to a plaintiff that caused him to believe Williams' false representations:

"WESTERN MORTGAGE COMPANY
Dexter Horton Building
Seattle 4, Washington
October 27, 1953

"E. R. Nailor Lumber Company
Port Angeles
Washington

"Gentlemen:

"This is to notify you that Mr. Wayne Williams has permanently associated himself with the Western Mortgage Company of Seattle, Washington.

"Mr. Williams and the Western Mortgage Company will derive numerous benefits from this association. The Western Mortgage Company gains contact with an experienced builder and subsequent close contact with the mortgage lending field in the Olympic Peninsula area. Furthermore, Mr. Williams will receive first priority on all mortgage lending requirements. *This will also permit Mr. Williams to resume his building program in the very near future.*

"*It is suggested that any questions regarding the aforementioned association be directed to Mr. Williams, personally.*

"Yours truly,
/s/ Gifford P. Owen
"Gifford P. Owen, President
"WESTERN MORTGAGE COMPANY."

(Italics ours.)

Each of the other plaintiffs received a similar letter or was shown, by Williams, one of identical import addressed "To whom it may concern."

Pursuant to the authorization in the letters regarding his "association" with the defendants, Williams made the following statements to plaintiffs about his financial status: That he owned stock in the Western Mortgage Company in an amount over sixty-seven thousand dollars and exhibited the stock to a plaintiff; that he owned the controlling interest in the company; that he was a permanent member of the board of directors; that he had forty thousand dollars immediately available for payment of past debts; and that he had several hundred thousand dollars

available for future building by virtue of his interest in the Western Mortgage Company. These representations were false.

All of the plaintiffs testified that, prior to receiving the letters, they had stopped all credit to Williams because of his indebtedness to them and his inability to meet his obligations. Having received the letters from defendants and having relied upon Mr. Williams' misrepresentations, as we have outlined them, plaintiffs re-established Mr. Williams' credit and sold him materials until the fall of 1954.

■ "Representations of fact as to the credit or financial condition of a third person may, where the essential elements of fraud are present, constitute remediable fraud." 37 C. J. S. 300, § 48.

"The rule that recovery may be had for misrepresentations as to a third person's financial condition is most frequently applied where one person, for the purpose of inducing another to lend money or sell goods or other chattels on credit to a third, misrepresents the financial standing of the latter; . . ." 37 C. J. S. 303, § 48.

■ There is substantial evidence in the record, which the jury was entitled to believe, that defendants intentionally participated in the transaction with Mr. Williams to further their common purpose, and that plaintiffs were entitled to rely upon defendants' false representations and did so to their damage. That Mr. Williams is not a party to these actions is immaterial, for, in *State ex rel. Woodworth & Cornell v. Superior Court*, 9 Wn. (2d) 37, 41, 113 P. (2d) 527 (1941), this court said:

"Defendants were charged with civil conspiracy, and are *jointly* and *severally* liable. The action may be maintained against any one or all. [Citing cases.] . . ." (Italics ours.)

We find no merit in defendants' assignments of error directed to the question of their liability.

We conclude, however, that the judgments must be reversed and the cases remanded for a new trial upon the question of damages.

During the period in question, Mr. Williams paid sub-

stantial amounts to plaintiffs, who applied these payments to Mr. Williams' *pre-existing* indebtedness. The court instructed:

"You are instructed that when a *debtor* fails to direct how a payment is to be applied the *creditor* may make the application as he may see fit. It is not necessary that the debts be of the same character; so where one is due on a note and the other on a running account, the creditor may apply a payment to either. Nor are the dates of the obligation material, and he may appropriate the money to the earliest or latest one of his option." (Italics ours.)

It is apparent from the judgments that the jury followed this instruction, for the amounts of the judgments (with one exception) are the same as the amounts prayed for in plaintiffs' complaints and set forth in plaintiffs' bills of particular, which itemize the sales made to Mr. Williams during the period in question, without credit for any sums paid.

■ We would have no quarrel with the instruction were this an action between *debtor* and *creditor* or between plaintiffs and Mr. Williams, but it is not. Defendants had nothing to do with Mr. Williams' pre-existing indebtedness. The measure of plaintiffs' loss on the new line of credit, caused by defendants' participation in this transaction, is the difference, if any, between the amounts purchased and the amounts paid thereon during the period in question.

"The measure of damages for fraudulent representations inducing a sale on credit to an insolvent third person is the value of the property at the time of the sale, less the amount paid and the value of security taken." 24 Am. Jur. 67, § 236.

■ One further matter must be considered. It appears from the record that several plaintiffs released certain liens they had established against Mr. Williams' property. The amounts and nature of these liens do not appear with sufficient certainty in the present record. If the liens were established because of Mr. Williams' pre-existing indebtedness, but were paid and released during the period in question from funds realized from the properties to which the

liens had attached, defendants would not be entitled to credit for these payments in the amount of the liens, for their participation had nothing to do with such transactions. If, on the other hand, the liens were released without payment because plaintiffs relied upon the misrepresentations involved in the instant actions, then defendants would be chargeable with the amount of such liens.

The judgments are reversed, and the cases remanded for a new trial limited to a determination of plaintiffs' damages, if any, in a manner consistent with this opinion. Defendants, having secured substantial relief on this appeal, will recover their costs in this court.

It is so ordered.

ALL CONCUR.

[1]Reported in 338 P. (2d) 740.