[No. 36468.    En Banc.    January 23, 1964.]

McInnis & Company, Inc., *Respondent*, v. Western Tractor & Equipment Company, *Appellant.*\*

*Cartano, Botzer, & Chapman, Ronald J. Bland,* and *Robert A. O'Neill,* for appellant.

\*Reported in 388 P. (2d) 562.

*Matsen, Clark, Cory & Matsen,* by *Newman H. Clark,* for respondent.

DONWORTH, J.—This is an appeal from a judgment by which respondent was awarded damages based on a finding that respondent did not receive the grading equipment that it ordered and for which it had paid appellant. The complaint alleged certain specific misrepresentations on the part of appellant which induced the sale of the equipment, and prayed for damages. No rescission was sought.

Respondent, McInnis and Company, Inc., is a large exporting firm, with its headquarters in Seattle. January 13, 1958, respondent was informed by its agent in Okinawa that the Okinawa Trading Company was in the market for a LeTourneau-Westinghouse tractor and scraper unit. The Okinawa Trading Company acts as the purchaser for the government of Ryukyu Islands (GRI), and the tractor and scraper unit desired by the Okinawa Trading Company was for sale to GRI.

Respondent's vice president telephoned appellant, Western Tractor & Equipment Company, and told them that it was interested in purchasing a LeTourneau-Westinghouse tractor and scraper unit. It is respondent's position that in this telephone conversation and in all subsequent negotiations respondent, through its agents, made known to appellant that the specifications for the tractor and scraper unit required that it be a new and current model, and that it was desired for resale to GRI.

Respondent had to enter a competitive bid, and it was informed by its agent in Okinawa that the initial price quoted by appellant was too high. Further negotiations led to a lower price on a tractor and scraper unit which appellant had in stock. This unit was represented to be a new unit and of a current model. This lower price enabled respondent to submit a lower bid and to secure the sales contract with Okinawa Trading Company.

Prior to the purchase, respondent's officers, Malcolm McInnis and Merville W. McInnis, were shown the tractor and scraper unit by appellant's sales representative at its place

of business in Seattle, and they discussed certain special equipment that had to be removed. However, both of the McInnises testified that they did not make an inspection of the equipment because they were not familiar with this kind of merchandise. A written contract was entered into by the parties for the purchase of the tractor and scraper unit. Delivery was to be f.o.b. Seattle. (The terms of the contract will be described below.)

The equipment was delivered to Seattle Pier 88 and shipped to Okinawa. Malcolm McInnis went to the pier before the ship sailed and saw the equipment on the dock after the tractor and scraper were disconnected. No inspection was attempted at that time. After the tractor was received by Okinawa Trading Company, respondent was notified that GRI refused to accept the tractor because it was used and it was not of a current model. Appellant, after being so informed by respondent, still insisted that the equipment was new and of a current model. M. W. McInnis then flew to Okinawa, where he had the equipment inspected by mechanics, who confirmed the report that it was used. Besides the evidence of wear, it was discovered that the hour meter had been set back to zero. Mr. McInnis negotiated a settlement with GRI and the equipment was sold at a substantially reduced price.

This action was commenced to recover damages, the respondent alleging, in its pleadings, misrepresentation and breach of warranty.

The trial court found that misrepresentations had been made by appellant to respondent that the tractor and scraper unit was new and of a current model, whereas, in fact, the equipment had been used for 68 hours as a demonstrator and the hour meter had been set back to zero. The tractor was a 1956 model; the descriptive literature given respondent was a 1956 catalogue. Physical changes in specifications of the tractor had thereafter been made by the manufacturer and a new catalogue was published in 1957. The sale was consummated in February, 1958. On the theory of breach of warranty, the trial court awarded damages to respondent. The court's conclusions of law re-

cite that, by reason of the breach of contract by appellant and its failure to fulfill the warranties of sale of the equipment, respondent is entitled to recover certain damages which it incurred by reason thereof and which naturally flow therefrom.

The written agreement of the parties constituted both the order and contract in a single document. The full description of the equipment purchased embodied therein was:

"1 LeTourneau Westinghouse Model D Tournapull with D scraper standard equipped with 18:00 x 25 16 ply tires and standard tools FOB Seattle Pier 88."

The parties having a specific tractor unit in mind, it is not contended that the above description is ambiguous, necessitating parol evidence to identify the subject of the contract.

Respondent's theory and argument on appeal in support of the judgment is that appellant's oral representation that this tractor was new and of a current model constituted an express warranty under the provisions of RCW 63.04.130, and that there was an implied warranty of fitness for a particular purpose, under the provisions of RCW 63.04.160 (5). In accordance with the latter theory, respondent contends that there is a custom of governmental agencies buying only new equipment of the latest model, that appellant knew that the tractor and scraper unit was for eventual resale to GRI, and that respondent relied upon appellant to supply a tractor fit for this purpose.

It is appellant's position that the parties are limited to the written contract to determine the terms of the sale. This contract contains the following limiting language:

"I (we) have read the matter on the back hereof and agree to it as part of this order, the same as if it were printed above my (our) signature. The front and back hereof comprise the entire agreement affecting this order and no other agreement or understanding of any nature concerning same has been made or entered into. . . .

"6. The purchaser agrees that this order shall not be countermanded by him, and that when it is accepted . . . it will cover all agreements between the parties relative to

656

this transaction, and that the seller is not bound by any representations or terms made by any agent relative to this transaction which are not embodied herein.

" . . .

"9. No warranties of any kind whether express or implied are made by the seller with respect to any products described herein unless endorsed hereon and signed by the parties hereto."

The rule is well settled that no warranty, express or implied, will be found where, as here, the seller expressly refuses by merger and disclaimer clauses to give any warranties. *McDonald Credit Ser., Inc. v. Church,* 49 Wn. (2d) 400, 301 P. (2d) 1082 (1956); *Williamson v. Irwin,* 44 Wn. (2d) 373, 267 P (2d) 702 (1954); *Lent v. McIntosh,* 29 Wn. (2d) 216, 186, P. (2d) 626 (1947); *Jones v. Mallon,* 3 Wn. (2d) 382, 101 P (2d) 332 (1940); *Webster v. Romano Engineering Corp.,* 178 Wash. 118, 34 P. (2d) 428 (1934). Also, see RCW 63.04.720.

In *Holland Furnace Co. v. Korth,* 43 Wn. (2d) 618, 624, 262 P. (2d) 772, 41 A.L.R. (2d) 1166 (1953), we stated that parol evidence admitted to show fraud could not be used to vary the terms of a written agreement and prove the existence of express or implied warranties. See, also, *Nyquist v. Foster,* 44 Wn. (2d) 465, 268 P. (2d) 442 (1954).

In view of the merger and disclaimer clauses, the judgment cannot be sustained on the theory of breach of warranty. The cases cited by respondent do no more than apply the statutory warranty provisions previously alluded to. These cases do not involve written contracts containing limiting clauses such as we have in the case at bar.

No action can be maintained on breach of warranty by respondent, but, where fraud vitiates the contract, an action can be maintained upon that theory. A cause of action in fraud exists even where there is a merger and disclaimer clause in the contract. *Coson v. Roehl, ante* p. 384, 387 P. (2d) 541 (1963).

Respondent's pleading and the evidence presented at the trial were sufficient to bring before the trial court the question of fraud. While the word fraud is not used in the complaint, this is not necessary if constructive fraud

is pleaded, as in this case. *Champlin v. Transport Motor Co.*, 177 Wash. 659, 33 P. (2d) 82 (1934); *Stanley v. Parsons,* 156 Wash. 217, 286 Pac. 654 (1930). Also, under Rule of Pleading, Practice and Procedure 15(b), the pleadings may be amended by motion at any time,

" . . . even after judgment; but failure so to amend does not affect the result of the trial of these issues. . . ." 3 Orland, Washington Practice, Rule 15 (1960).

We do not mean to imply that the facts developed at the trial of this case warrant imposing liability in the absence of a finding that the representations relied upon amounted to actionable fraud. However, the trial court, in the findings now before us, found that:

" . . . The plaintiff's representatives relied on and were induced to make such purchase by the statements of the defendant's authorized representative, which were *untrue* and *dishonest.* . . ." (Italics ours.)

While the trial court's findings of fact are consistent with the theory of fraud, we do not think they are sufficient without a specific finding by the trial court that the defendant acted fraudulently. We, therefore, remand the case to the trial court for a specific finding as to whether fraud existed and thus vitiated the contract.[1]

For the benefit of the trial court, we call attention to the following matters:

(1) Among the findings of fact to which appellant assigns error is finding No. 5, which contains the statement:

"The defendant did not disclose to plaintiff's representative who *could not* and did not know the condition of the machines and equipment or that they had been used and altered, or that the literature and machines were not new or of a current model. . . ." (Italics ours.)

M. W. McInnis did, in fact discover the condition of the machines upon inspecting them in Okinawa. Since respondent was afforded an opportunity to inspect the equipment in Seattle before the machinery was purchased, the above

---

[1]Fraud should be considered in light of the elements given in *Webster v. Romano Engineering Corp.,* 178 Wash. 118, 34 P. (2d) 428 (1934).

finding to the extent noted by italics is not supported by the evidence. The testimony that respondent's officers were not familiar with this type of equipment did not prevent their having an inspection made in Seattle by competent persons in the same manner as was done after it arrived in Okinawa. The issue in this regard, however, is respondent's *right to rely* on the representations made by appellant under all the circumstances. (One element of fraud is the right to rely.) The issue is now sent back to the trial court for determination.

(2) The trial court, in awarding damages for breach of warranty, found that the difference in the value of the equipment as represented as compared with what was actually delivered was $6,797.44. Error is assigned to this finding. The only evidence to support this amount of damages is testimony that M. W. McInnis, acting on behalf of respondent, reduced the price of the tractor and scraper by $6,797.44 in a compromise settlement made with its customer, Okinawa Trading Company. This settlement, in and of itself, is insufficient to establish the damages allowed because of the fraud.

The measure of damages in fraud cases is to be computed by the "benefit of bargain" rule, which is the difference between the value of the property had it been as represented, and its actual value. *Salter v. Heiser*, 39 Wn. (2d) 826, 239 P. (2d) 327 (1951), and cases cited; *Scroggin v. Worthy*, 51 Wn. (2d) 119, 316 P. (2d) 480 (1957).

We feel that respondent has not sufficiently shown that the settlement it made with its customer accurately reflects the application of the proper rule for computing damages as stated above. The trial court is directed to hear such evidence bearing on the amount of damages as the parties may present which would tend to show the actual value of the tractor and scraper unit when delivered in Seattle.

(3) Appellant also assigns error to the awarding of damages for the expenses incurred by M. W. McInnis in traveling to Okinawa to investigate the condition of the machinery . The plaintiff is allowed only such special damages as are shown to have been proximately caused by

the defendant's fraud. *Salter v. Heiser, supra; Buttnick v. Clothier,* 43 Wn. (2d) 667, 263 P. (2d) 266 (1953); *Gnash v. Saari,* 44 Wn. (2d) 312, 267 P. (2d) 674 (1954). The trial court is directed to determine whether the travel expenses incurred were proximately caused by the appellant's fraud, if fraud is found.

We find no merit in appellant's contention that the machinery was still "new" even though it had been demonstrated 68 hours.

The judgment is hereby reversed and the cause remanded to the superior court for further proceedings in accordance with this opinion. Costs of this appeal shall abide the final determination of the cause. It is so ordered.

ALL CONCUR.