[No. 37903.   Department One.   February 10, 1966.]

MCINNIS & COMPANY, INC., *Respondent and Cross-appellant,* v. WESTERN TRACTOR & EQUIPMENT COMPANY, *Appellant.* *

*Reported in 410 P.2d 908.

966

*Cartano, Botzer & Chapman* and *Robert A. O'Neill,* for appellant.

*Matsen, Clark, Cory & Matsen,* by *Newman H. Clark,* for respondent and cross-appellant.

HALE, J.—This is the second appeal arising from the sale of a LeTourneau-Westinghouse tractor-scraper unit by defendant Western Tractor & Equipment Company to plaintiff McInnis & Company. On the first appeal, heard *en banc,* we reversed and remanded the cause for further evidence on issues of fraud and damages. *McInnis & Co. v. Western Tractor & Equip. Co.,* 63 Wn.2d 652, 388 P.2d 562 (1964).

Our opinion affirmed the trial court's findings and conclusions that the tractor-scraper unit was not new, unused, and the latest model as represented to be by the seller, but we held that the buyer, because of merger and disclaimer clauses in the signed agreement exonerating the seller from any warranties not in writing, could not recover for breach of warranty. *Id.* at 656, 388 P.2d at 564. Since the court found breach of warranty and suggested actionable fraud as well, our remand allowed the parties to present further evidence on the question of fraud.

█ We also said that the court had applied a doubtful measure of damages and remanded on that point with respect to all items of damage. We directed that damages be fixed in accordance with the *benefit-of-the-bargain rule*— a rule which allows the difference between actual value of the property at the time of sale and the value it would have had if the representations concerning it had been true. 24 Am. Jur. *Fraud and Deceit* § 277; *Hoke v. Stevens-Norton, Inc.,* 60 Wn.2d 775, 375 P.2d 743 (1962); *Nailor v. Western Mortgage Co.,* 54 Wn.2d 151, 338 P.2d 737, 72 A.L.R.2d 938 (1959). We likewise expressed doubt concerning the damage awarded for travel expenses to and from Okinawa in the sum of $1,309.15 and living and other expenses of $800 incurred during plaintiff Merville W. McInnis' 6-week stay there.

At the second trial, the court had before it, by stipulation, the entire record of the first trial and additional evidence submitted by each party, and this time affirmatively found the nine separate requisites of actionable fraud in the sale as enumerated in *Webster v. L. Romano Eng'r Corp.,* 178 Wash. 118, 34 P.2d 428 (1934). The trial court found that defendant had represented the tractor-scraper unit to be new, unused and the latest model. It found too that the machinery had been used 68 hours in demonstrations, its hourly timing meter set back to zero, and that its manufacturer had brought out one later model containing a few slight changes. Even though this court might see in this transaction a breach of warranty only and no actionable fraud, we observe that the evidence abundantly sustains

the trial court on the question of fraud and, therefore, will not discuss the point further.

■ Pursuant to our directions in the first appeal (63 Wn.2d 652, 658), the trial court on the second trial sought to apply the benefit-of-the-bargain rule as the measure of damages in the sale of the tractor: It accepted the purchase price $19,250, as the value of the machine in the condition as represented by the seller and fixed its actual value at $11,000 in accordance with the testimony of Merville W. McInnis, president of the purchasing corporation, who, together with his son, Malcolm McInnis, the company vice-president, negotiated the purchase of the machine. On the theory that M. W. McInnis stood in the role of owner and that the owner of a chattel, even though having no expert knowledge on the subject, may express an opinion as to its value, the trial court admitted Mr. McInnis' testimony concerning value despite his repeated statements that he knew little of either the technical operation of such machinery or its market value. Ordinarily, the opinion of an owner as to the market value of his chattel, even standing alone without supporting evidence, is sufficient to support a jury verdict. *Ingersol v. Seattle-First Nat'l Bank,* 63 Wn.2d 354, 387 P.2d 538 (1963); *Cody v. Herberger,* 60 Wn.2d 48, 371 P.2d 626 (1962). But defendant contends that McInnis had so little knowledge of the subject as to take his opinion outside this rule.

Defendant made no objection either that the officer of a corporate purchaser or owner may not assume the role of owner, and we neither consider nor rule upon such a question. The answer, when such question arises, we assume, will be affected in a large measure by the size, nature and character of the corporation, the degree of supervision exercised by the officer and the extent of his participation in the acquisition and use of the chattel. Defendant's objection to McInnis' testimony on value goes directly to the latter's competency to testify at all on this subject in light of his repeated statements that he had no knowledge of the machine's technical qualities, little of its operation, and virtually no knowledge of its market value.

Mr. McInnis, in his case in chief, had testified that his firm had never before handled a tractor-scraper of this or similar type; that he did not even know the machine was equipped with an hour meter to measure the hours of operation; that he had never been in or identified with the machinery business; and that he had not inspected the machine carefully before purchasing it because, in the light of his inadequate knowledge, such an inspection would have been pointless.

He said that he could not have discerned the difference between a new and slightly used machine or one annual model from another. When pressed for an answer as to value in Seattle at the time of delivery, he said between $10,000 and $11,000, and the court accepted the higher figure as evidence of market value in its actual condition. Deducting the $11,000 from the $19,250, the court found damages in the sum of $8,250 as a basic figure, in accordance with the benefit-of-the-bargain rule.

■ Defendant's objections to Mr. McInnis' testimony must, we think, be held to run against the weight rather than the admissibility of his opinion as the owner of the tractor-scraper unit. The record shows sufficient familiarity with the value of the machine to at least render his opinion admissible as an owner. He joined his son in going to defendant's plant to look the machine over before proceeding with the sale. He saw the machine in defendant's yard and discussed its price and method of payment before completing the deal. He, in company with defendant's representatives, walked around the equipment, and they pointed out its mechanical features to him.

He observed the machinery later, after it had been loaded into the hold of a ship. He studied the advertising literature pertaining to this and other machines. After its final rejection by the Government of Ryukyu Islands (GRI), he went to Okinawa and examined it carefully, making detailed notes of its condition. He discussed the machine with representatives of the ultimate purchaser and had numerous conferences concerning its value both as a new machine and as it was on arrival in Okinawa. Although the infor-

mation derived from these events would not ordinarily be worthy of great weight, in our opinion it is sufficient to render the testimony of the owner admissible.

■ An owner who has acquired a chattel through purchase or negotiation and has substantial information concerning its composition, use and operation, even though his negotiations do not supply him with general knowledge of the market, will be permitted to express his opinion as to its value because the law assumes that as an owner he has sufficient familiarity with the chattel to know its worth. *Cunningham v. Town of Tieton,* 60 Wn.2d 434, 374 P.2d 375 (1962); *Abbott Corp. Ltd. v. Warren,* 56 Wn.2d 606, 354 P.2d 926 (1960); *Wicklund v. Allraum,* 122 Wash. 546, 211 Pac. 760 (1922). Mr. McInnis met the minimal requirements of this rule, and his opinion on value was properly received.

■ Although the learned trial judge found the difference in value of the machinery, *i.e.,* the difference between the purchase price at $19,250 as a new machine and its actual value ($11,000) at the time of purchase in Seattle to be $8,250, it took note of and applied the price which plaintiff received for it on Okinawa as the true measure of damages. Since defendant would be entitled to any mitigation of damages thus achieved, the trial court correctly applied this latter measure and awarded damages of $6,797.44, the amount of money actually refunded by plaintiff to its consignee. The trial court, having found the value according to the benefit-of-the-bargain rule, thereby correctly allowed defendant the benefit of this mitigation.

The two other items of damages, travel expense for plane fare and incidentals to and from Okinawa in the sum of $1,309.15 and the item of $800 awarded for living expenses incurred on Okinawa during the 6-weeks period that plaintiff's president negotiated the sale at the reduced price, present a more subtle problem. The court found these to be damages following naturally and reasonably from the fraudulent representations and concealments asserted to have been committed. It accepted plaintiff's view that both the trip and protracted negotiations were reasonably necessary.

As to these items of damages, the court said in finding No. 6:

Plaintiff sent its President to Okinawa, at a travel expense of $1,309.15, to establish with the purchaser (GRI) that the machine was new and of current model and to consummate the sale. Such travel expense was a loss directly and proximately sustained by plaintiff, which naturally resulted from the misrepresentations and fraud of the defendant. That while plaintiff's representative was in Okinawa he spent, as he was required to do for hotel and other expenses of living and charges while there, the sum of $800, and to mitigate damages and losses, rather than abandon the equipment in that area where there was no selling market therefor, after defendant refused rescission or to replace such unit, the plaintiff effected disposition to GRI by refunding to the ultimate purchaser the sum of $6,797.44, which losses were directly sustained and naturally and directly resulted from the fraudulent acts of the defendant.

In considering damages allowed for travel and living expenses, we observe that plaintiff company carried on more than a million dollars worth of business in the Ryukyu Islands, nearly all of it with construction contractors. It had an agent, Pan-Ocean, Ltd., with personnel on the islands to act for and represent plaintiff constantly. The agent had, in the past, proved capable, trustworthy and efficient, and the record does not disclose any compelling reason for plaintiff's president to remain on the scene for so protracted a period as 6 weeks to negotiate a settlement.

■ Where, as here, application of the benefit-of-the-bargain rule as the sole standard of damages will not tend to make the buyer whole because plaintiff has suffered injuries not entirely encompassed by the rule but which, nevertheless, follow as the natural and ordinary consequences of the wrong, additional damages thus caused will be allowed.

Therefore, when, in alleviating or curing the consequences of fraud or misrepresentation, more than one course of action reasonably opens to the injured party, and the choice of action taken is reasonable under the circumstances, the person whose wrong forced the choice cannot

complain that one choice rather than another was exercised. *Hogland v. Klein,* 49 Wn.2d 216, 298 P.2d 1099 (1956).

Here, where the misrepresentations induced plaintiff buyer to ship a particular tractor-scraper unit to Okinawa for resale as a new machine to the only buyer available—there being no other market there for this machinery—plaintiff's journey to the final place of delivery to both protect the property and negotiate its final acceptance can be said to be a natural and ordinary consequence of the misrepresentation. That plaintiff buyer had other courses of action open to him, *i.e.,* return the machinery to Seattle at shipping costs of $2,500 for sale on the open market, or tender it in rescission to his seller, or take other action in mitigation, does not detract from the reasonableness of his conduct in going to Okinawa to negotiate the sale at the best price obtainable.

Considering the size and nature of the machinery, the remoteness of its destination, the total lack of purchasers other than the consignee, and all the other circumstances, we readily perceive a reasonable need for plaintiff's president to go to Okinawa to protect the machinery and think that the court properly allowed travel expenses of $1,309.15 in damages for the trip.

But his stay there seems another matter. The record does not satisfy us that his 6-weeks sojourn on Okinawa followed as a natural and reasonable consequence of the defendant's misrepresentations. As we said in *Snowflake Laundry Co. v. MacDowell,* 52 Wn.2d 662, 328 P.2d 684 (1958):

> One who has sustained damage, by reason of the act of another, must use reasonable efforts to minimize his damages.

We cannot see in this record where plaintiff proved with reasonable certainty a reasonable need for his attendance on Okinawa for a period of 6 weeks; and, therefore, reimbursement for such expenditures seems based on speculation and conjecture and not shown to be a reasonable and ordinary consequence flowing naturally from defendant's misrepresentations.

Plaintiff cross-appealed, but we will not discuss the questions raised therein as we are of the opinion that the foregoing analysis disposes of its contentions.

The judgment is, therefore, affirmed except that damages in the amount of $800 for plaintiff McInnis' living and other expenses on Okinawa will be disallowed, and the judgment reduced in that amount.

HILL, OTT, and HUNTER, JJ., and LANGENBACH, J. Pro Tem., concur.

---

April 7, 1966. Petition for rehearing denied.