[No. 7630–2–I. Division One. October 27, 1980.]

ARCHER W. KAMMERER, SR., ET AL, *Respondents,* v.
WESTERN GEAR CORPORATION, *Appellant.*

*Seed, Berry, Vernon & Baynham, Richard W. Seed,* and *Donald L. Logerwell,* for appellant.

*Graybeal & Uhlir, John O. Graybeal,* and *James R. Uhlir,* for respondents.

JAMES, A.C.J.—Plaintiffs Archer W. Kammerer, Sr., Archer W. Kammerer, Jr., and Jean K. Lamphere sued Western Gear Corporation for breach of contract and fraud in the inducement of the contract. The jury awarded both compensatory and punitive damages, under California law, on the fraud claim and awarded compensatory damages on the breach of contract claim. Western Gear appeals entry of the judgment for fraud. The Kammerers cross–appeal the trial judge's refusal to enter judgment on the breach of contract claim. We affirm the judgment and dismiss the cross appeal.

The Kammerers, who are California residents, hold patents on certain oil drilling equipment called heave compensators. Heave compensators are used in offshore oil drilling to counteract the effect of wave action. Western Gear is a Washington corporation which manufactures offshore oil

drilling equipment. In May 1972, after negotiations in California, the parties entered into an agreement licensing Western Gear to manufacture heave compensators covered by five Kammerer patents.

Western Gear made an initial payment of $20,000 required by the agreement. Western Gear was to pay a $10,000 royalty for each compensator sold. Although Western Gear sold a number of compensators during the life of the agreement, it made no further payments to the Kammerers. At trial, Western Gear maintained the compensators it sold were not covered by the Kammerer patents. The jury, however, concluded they were covered. The jury also found that Western Gear never intended to perform and that it fraudulently induced the Kammerers to enter into the agreement.

## ISSUES

ISSUE ONE. Did the trial judge err in permitting discovery of arguably privileged attorney–client documents after Western Gear had stipulated that its attorneys would be called as witnesses?

ISSUE TWO. Did the trial judge erroneously admit privileged documents?

ISSUE THREE. Did the trial judge erroneously permit the introduction of other prejudicial evidence?

ISSUE FOUR. Did the trial judge erroneously apply California law to the Kammerers' claim for fraud?

ISSUE FIVE. Did the trial judge err in permitting an award of punitive damages under California law?

ISSUE SIX. Did the trial judge err in excluding testimony that the Kammerer patents were invalid?

ISSUE SEVEN. Did the trial judge err in entering judgment for the amounts of actual and punitive damages for fraud awarded by the jury?

ISSUE EIGHT. Did the trial judge err in refusing to enter judgment for breach of contract?

DECISION

ISSUE ONE.

CONCLUSION. Where a party's intent to call its attorney as a witness is sufficiently definite as to constitute a waiver of attorney–client privilege, the opposing party is entitled to discovery of documents otherwise protected by the privilege.

■■ Prior to trial, the Kammerers moved under CR 37 to compel discovery of documents previously withheld by Western Gear on grounds of attorney–client privilege. At that time, Western Gear conceded that it might have to call its attorneys as witnesses to events occurring during negotiations. The parties stipulated that the issue should be decided on the basis that Western Gear would call its attorneys. The trial judge ruled that the documents, including those later found to be privileged, were discoverable because the stipulation acted as a waiver of attorney–client privilege. We agree.

RCW 5.60.060(2) provides that an attorney shall not be examined as to any communications or advice by him to his client without consent of the client. CR 26(b)(1) defines the scope of civil pretrial discovery: "Parties may obtain discovery regarding any matter, not privileged, which is relevant . . ." However, offering an attorney's testimony concerning matters learned in the course of his employment waives the attorney–client privilege. 8 J. Wigmore, *Evidence* § 2327, at 637–38 (rev. ed. 1961), *cited in State v. Vandenberg,* 19 Wn. App. 182, 575 P.2d 254 (1978); *Martin v. Shaen,* 22 Wn.2d 505, 156 P.2d 681 (1945).

In *Phipps v. Sasser,* 74 Wn.2d 439, 445 P.2d 624 (1968), an assertion of physician–patient privilege in a comparable situation is considered. *Phipps* holds that a plaintiff cannot use the claim of privilege to bar discovery up to the time he calls the physician to testify. The court's language in *Phipps* at pages 446–47 is apposite:

We would agree that whenever it does become apparent that the plaintiff must decide in favor of waiver, then that waiver should not be delayed until the trial itself.

The plaintiff should not have the unfair tactical advantage of a trial waiver which almost invariably results in a continuance and, frequently, in the dismissal of the action and another trial.

Certainly, at some stage in the pretrial proceedings, the plaintiff must decide whether he is going to call his treating physician or physicians, and, if he is, then the defendant is entitled to know it in time to take the deposition of such physician or physicians and prepare to meet their testimony.

Here, Western Gear stipulated that the motion under CR 37 be decided as if Western Gear's attorneys would testify. The trial judge offered to deny the motion if Western Gear agreed not to call its attorneys. Western Gear would not do so. We conclude that Western Gear's intent to call its attorneys was sufficiently definite to constitute a waiver of attorney–client privilege. The trial judge did not err in ordering discovery of the otherwise privileged documents.

ISSUE TWO.

CONCLUSION. Memorandums between two parties, neither of whom is an attorney, and which only reflect the receipt of unattributed legal advice, do not constitute a privileged communication between attorney and client.

Western Gear eventually decided not to call its attorneys. Documents discovered by the Kammerers were introduced over Western Gear's objections that the documents were privileged. The documents are Western Gear in–house memorandums summarizing a discussion at a meeting which reviewed the status of the Kammerer patents. Patent attorneys for Western Gear were present at the meeting. The memorandums describe a "group decision" to pursue negotiations to acquire the patents or obtain lower royalties. From the memorandums, it is apparent that the participants considered the patent attorneys' advice concerning patent validity, royalty obligations, and chances of successful patent litigation.

The attorney–client privilege applies to communications and advice between attorney and client, RCW 5.60-.060(2), *State v. Emmanuel,* 42 Wn.2d 799, 259 P.2d 845

(1953), and extends to documents which contain a privileged communication, *Victor v. Fanning Starkey Co.,* 4 Wn. App. 920, 486 P.2d 323 (1971). The documents here in question do not disclose either a communication from or advice to Western Gear from its attorneys. Neither were they prepared by or at the direction of an attorney. None of the reported discussion of legal topics is attributed to an attorney. The "group decision" is a business decision based only in part upon legal advice and considerations.

Because attorney-client privilege results in exclusion of otherwise material and relevant evidence, "the privilege cannot be treated as absolute; but rather, must be strictly limited to the purpose for which it exists." *Dike v. Dike,* 75 Wn.2d 1, 11, 448 P.2d 490 (1968). The trial judge did not err in admitting the memorandums.

ISSUE THREE.

CONCLUSION. The challenged evidence was properly admitted.

██ Western Gear contends it was improper for the jury to consider subsequent events as bearing on its state of mind at the time the contract was executed. We do not agree. Any facts tending to establish a party's theory, or to qualify or disprove the testimony of an adversary may be relevant. The relevancy of evidence lies within the discretion of the trial judge. *Lamborn v. Phillips Pac. Chem. Co.,* 89 Wn.2d 701, 575 P.2d 215 (1978). A party's intent at the time of a contract may be established or inferred from subsequent actions. *Fruit Indus. Research Foundation v. National Cash Register Co.,* 406 F.2d 546 (9th Cir. 1969). Further, fraud may be, and often is, proven by circumstantial evidence. *Kallgren v. Steele,* 131 Cal. App. 2d 43, 279 P.2d 1027 (1955); *State v. Gallagher,* 15 Wn. App. 267, 549 P.2d 499 (1976).

██ Western Gear also contends the Kammerers' expert's testimony misled the jury because the expert relied solely on the language in the claims to determine the scope of the Kammerers' patents. Western Gear asserts there is

no infringement absent a "real identity of means, operation and result", *Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co.*, 194 F.2d 945, 947 (7th Cir. 1952), and thus it was error to permit the expert to testify only on the basis of claim language. We do not agree.

If a device claimed to infringe a patent "falls clearly within the claim, infringement is made out and that is the end of it." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607, 94 L. Ed. 1097, 70 S. Ct. 854 (1950). If it is unnecessary to look beyond the language of the claims, a court will not do so. *Paper Converting Mach. Co. v. FMC Corp.*, 409 F.2d 344 (7th Cir.), *cert. denied*, 396 U.S. 877, 24 L. Ed. 2d 136, 90 S. Ct. 154 (1969); *see Ziegler v. Phillips Petroleum Co.*, 483 F.2d 858 (5th Cir.), *cert. denied*, 414 U.S. 1079, 38 L. Ed. 2d 485, 94 S. Ct. 597 (1973); *Cardinal of Adrian, Inc. v. Peerless Wood Prods., Inc.*, 515 F.2d 534 (6th Cir. 1975). It was not error to permit the Kammerers' expert to testify on the basis of the claim language.

■■ Having been apprised of the basis of the Kammerers' expert's conclusions, the jury could weigh and compare them with the conclusions of Western Gear's experts. "The trier of fact is entitled to accept or reject the opinion testimony of any expert where his testimony conflicts with the opinion of another." *Thornton v. Annest*, 19 Wn. App. 174, 178, 574 P.2d 1199 (1978). A reviewing court will not substitute its judgment for that of the jury if there is credible evidence to support the verdict. *State v. O'Connell*, 83 Wn.2d 797, 523 P.2d 872, 77 A.L.R.3d 874 (1974).

ISSUE FOUR.

CONCLUSION. Under the Restatement (Second) of Conflict of Laws test adopted by Washington, *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 555 P.2d 997 (1976), California has the "most significant relationship" to this controversy. Therefore, we find that California law governs the Kammerers' fraud claim.

■ The Restatement (Second) of Conflict of Laws § 148(1) (1971) states:

> When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 . . .

While particular contacts, such as the place of injury, are to be considered, Restatement (Second) of Conflict of Laws § 145(2)(a) (1971), the court is not simply to count contacts, but must consider the competing policies and interests of the two states with respect to application of their laws. *Johnson v. Spider Staging Corp., supra.*

Here, both states have significant contacts with this controversy. Washington is the forum state. Western Gear is a Washington corporation and it manufactures its heave compensators at Everett, Washington, although a substantial part of its manufacturing capacity is in California. Western Gear representatives signed the license agreement in Washington, 1 day after the Kammerers signed in California. California was the site of all negotiations between the parties and the place where any fraudulent representations were made to the Kammerers. The Kammerers are residents of California. Payments of royalties were to be made in California and the initial $20,000 payment was made there. The parties also provided by their agreement that California law should govern their rights under the contract.

California has an obvious interest in the protection of its citizens against fraud, which is enhanced when the negotiations on which the fraud claim is based occurred in California. California has an interest in deterring fraudulent activities by corporations having a substantial business presence within its borders. Washington has no interest in protecting persons who commit fraud. Western Gear asserts that differences in Washington and California law governing fraud suggest that Washington has a policy of greater

caution in allowing judgments for fraud. Because we do not find any difference, material to this case, in the laws of the two states, we do not find any interest served by application of Washington law. Because Washington has no interests superior to or inconsistent with the interests of California in this controversy, application of the Restatement rule dictates that California law govern the Kammerers' claim for fraud.

ISSUE FIVE.

CONCLUSION. If another state has the "most significant relationship" to a controversy arising from a Washington resident's transaction of business in that state, a Washington court can award exemplary and punitive damages allowable under the statutes of the other state.

■ Under the Restatement (Second) of Conflict of Laws approach adopted by Washington, *Johnson v. Spider Staging Corp., supra,* the law of the place having the "most significant relationship" to the controversy determines the measure of damages, including the right to exemplary damages. Restatement (Second) of Conflict of Laws §§ 145, 171, comment *d* (1971). Unless some other state has a "greater interest" in the issue of damages, the law of the state of conduct and injury governs the measure of damages in a tort action. Restatement (Second) of Conflict of Laws § 171, comment *b* (1971).

The law of California, the state having the "most significant relationship" to the controversy, governs the Kammerers' right to compensatory damages. Unless Washington has a "greater interest" with respect to the issue of damages, California law also governs the right to exemplary damages. We must, then, consider whether Washington has the "greater interest" in determining the measure of damages in a controversy to which California law otherwise applies. In determining the interest of Washington in having its law of damages applied, this state's public policy concerning punitive damages must be considered.

It has been consistently held in Washington that punitive damages may not be recovered in the absence of statutory

authorization. *Stanard v. Bolin,* 88 Wn.2d 614, 565 P.2d 94 (1977); *Maki v. Aluminum Bldg. Prods.,* 73 Wn.2d 23, 436 P.2d 186 (1968); *Spokane Truck & Dray Co. v. Hoefer,* 2 Wash. 45, 25 P. 1072 (1891). Washington has no statute which authorizes exemplary damages for fraud.

The public policy of a state is expressed in its legislative enactments as well as its judicial decisions. *See Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978). Our legislature has enacted particular statutes which authorize awards of punitive or exemplary damages. For example, a person injured by unfair or deceptive trade practices, or other violations of the Consumer Protection Act, can recover punitive damages. RCW 19.86.090. Other statutes allowing recovery of punitive or exemplary damages include RCW 19.52.030 (usury) and RCW 64.12.030 (trespass to trees, shrubs or timber). Considering both legislative and judicial expressions of this state's public policy, we are satisfied that the allowance of punitive damages is not per se contrary to Washington public policy.

California law authorizes an award of punitive damages where Washington does not. But California has the "most significant relationship" to this controversy involving a Washington resident who went outside the state and transacted business there. In *O'Brien v. Shearson Hayden Stone, Inc.,* 90 Wn.2d 680, 586 P.2d 830 (1978), *aff'd on rehearing,* 93 Wn.2d 51, 605 P.2d 779 (1980), the court held that Washington usury law should not govern the rights of class action members who were Washington residents but whose contacts with California gave that state the "most significant relationship." The suit was brought by Washington residents who had been charged interest rates on margin accounts in excess of Washington's usury limit. Most members had negotiated and contracted with the brokerage firm in Washington and maintained their accounts there. As to them, Washington had the "most significant relationship" and they were entitled to the protection of Washington's usury law. The named plaintiffs, however, had negotiated and contracted with defendant in

California and maintained their account in that state. California had the "most significant relationship" as to these parties. As a result, the named plaintiffs were exposed to the higher usury limits of another state. *O'Brien v. Shearson Hayden Stone, Inc., supra.* Washington has a strong interest in enforcing its usury law; exemplary damages are allowed when the statute is violated. RCW 19.52-.030. But after *Shearson,* even a strong Washington policy may give way when asserted in a controversy to which another state has the "most significant relationship."

If a Washington resident chooses to transact his business in a state whose statutes authorize an award of punitive damages in the type of controversy which results from transacting that business, and that state has the "most significant relationship" to the controversy, we do not believe Washington has any "greater interest" in applying its law of damages to that controversy. We, therefore, hold that if another state has the "most significant relationship" to a controversy arising out of a Washington resident's transaction of business in the other state, a Washington court can award exemplary damages allowable under the statutes of the other state.

ISSUE SIX.

CONCLUSION. Principles of estoppel precluded Western Gear from offering evidence of patent invalidity.

Western Gear did not challenge the validity of the Kammerer patents during the life of the license agreement. At trial, Western Gear was not permitted to present expert testimony that the Kammerer patents had no value because they were invalid.

 Once an action is brought to enforce a license agreement or sue for its breach, a licensee is not estopped to challenge the validity of the underlying patent. *Lear, Inc. v. Adkins,* 395 U.S. 653, 23 L. Ed. 2d 610, 89 S. Ct. 1902 (1969). Cases interpreting *Lear,* however, have held that a licensee cannot avoid liability for royalties until such time as the licensee takes affirmative steps to challenge the validity of the patents. The underlying theory is that so

long as a licensee continues to accept benefits and protection under the license, it must pay the required royalties. *Kraly v. National Distillers & Chem. Corp.*, 502 F.2d 1366 (7th Cir. 1974); *PPG Indus., Inc. v. Westwood Chem., Inc.*, 530 F.2d 700 (6th Cir. 1976); *Bahamas Paper Co. v. Imperial Packaging Corp.*, 58 F.R.D. 355 (S.D.N.Y. 1973).

*Lear* embodies a federal policy aimed at the early adjudication of patent invalidity claims. *E.g., Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 465 F.2d 1253 (6th Cir. 1972), *subsequent appeal*, 489 F.2d 968 (6th Cir. 1973), *cert. denied*, 416 U.S. 939, 40 L. Ed. 2d 290, 94 S. Ct. 1942 (1974). If a licensee fails to challenge the validity of the patent during the life of the agreement, it is inconsistent with both federal decisions and federal policy to allow the defense.

However, Western Gear correctly notes that these decisions were breach of contract actions and contends that even if licensee estoppel is applicable to a breach of contract claim, it does not extend to a fraud claim. We do not agree. The licensee estoppel doctrine as modified by *Lear* is not an isolated development of patent law. Licensee estoppel is rooted in the "ordinary contract principle" that receipt of some benefit is enough to require the enforcement of a contract, regardless of its underlying validity or invalidity. *Lear, Inc. v. Adkins, supra* at 669. *Stover v. Winston Bros. Co.*, 185 Wash. 416, 55 P.2d 821, *appeal dismissed*, 299 U.S. 508, 81 L. Ed. 376, 57 S. Ct. 44 (1936); *Contractors Dump Truck Serv., Inc. v. Gregg Constr. Co.*, 237 Cal. App. 2d 1, 46 Cal. Rptr. 738 (1965); 28 Am. Jur. 2d *Estoppel and Waiver* § 59 (1966).

██ ██ Western Gear accepted the benefits and protections of the license agreement for 3 years prior to its termination. Estoppel requires (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) an action by the other party on the faith of such admission, statement or act, and (3) an injury to the other party if the claimant is allowed to repudiate his earlier admission, statement or act. *Liebergesell v. Evans,* 93 Wn.2d 881, 613 P.2d 1170 (1980). Here, Western Gear

fraudulently induced a sale of patent rights in exchange for promised royalties, but now claims that the rights so acquired had no value. The Kammerers relied upon Western Gear's promise to pay royalties in granting the license. While there was no fiduciary relationship, the law requires that contracting parties act in good faith and not deceive one another. *Liebergesell v. Evans, supra.* Fraud by nondisclosure or concealment violates this duty of good faith. *Sorrell v. Young,* 6 Wn. App. 220, 491 P.2d 1312 (1971). Fraud by affirmative misrepresentation also violates this duty of good faith. If Western Gear is not estopped, the Kammerers have lost not only value which both parties believed the license to have, but their opportunities to license other parties during its term.

Because it failed to challenge validity during the life of the agreement, Western Gear cannot raise the defense against the breach of contract claim under the doctrine of licensee estoppel. Under general principles of good faith in contracting and estoppel, Western Gear cannot argue patent invalidity against the fraud claim. In substance, Western Gear's evidence of value was a device to raise the defense of invalidity. We conclude that the trial judge was correct in excluding Western Gear's evidence of value.

ISSUE SEVEN.

CONCLUSION. The trial judge did not err in entering judgment for the actual and punitive damages for fraud awarded by the jury.

Western Gear contends that there was insufficient competent evidence to support the jury's award of $250,000 for actual damages. The jury was instructed that an award for fraud damages under California law "shall include: 1. The difference, if any, between the actual value of that with which the Kammerers parted under the license Agreement and the actual value of that which the Kammerers received." Instruction No. 35.

Only the Kammerers testified as to value. Whether a witness will be permitted to give an opinion as to value is a determination within the sound discretion of the trial

judge. If a witness has sufficient acquaintance with the property to form an opinion as to its value, it is for the jury to determine how much weight to attach to his testimony. *Bremerton School Dist. 100–C v. Hibbard,* 51 Wn.2d 226, 317 P.2d 517 (1957). An owner of a chattel having some familiarity with its characteristics is qualified to express an opinion as to its value. *McInnis & Co. v. Western Tractor & Equip. Co.,* 67 Wn.2d 965, 410 P.2d 908 (1966). The Kammerers were the named inventors on these patents. Further, they had owned and licensed many patents and could be considered qualified to state an opinion as to the value of the patents by virtue of this experience. The reliability of and weight to be given their estimates were for the trier of fact to decide.

Mr. Kammerer testified that by using Western Gear's estimates of sales and market shares, he calculated expected royalties of at least $250,000. This was a fair estimate of the value of the license given by the Kammerers and is credible evidence supporting the jury's award.

▆▆▆ Western Gear also contends that even if punitive damages are allowable, the $350,000 award was excessive. On appeal, the test is whether the damage award was so excessive as to be clearly the result of passion and prejudice. *Schroeder v. Auto Driveaway Co.,* 11 Cal. 3d 908, 523 P.2d 662, 114 Cal. Rptr. 622 (1974). Here, the punitive damages are 140 percent of compensatory damages. By comparison, Washington statutes allowing punitive damages generally provide for amounts double and treble actual damages. *E.g.,* RCW 64.12.030 (trespass to trees, shrubs or timber); RCW 49.52.070 (wage withholding). The damage award does not appear to be the result of passion and prejudice. We conclude that it was not excessive.

ISSUE EIGHT.

CONCLUSION. A claim that the defendant fraudulently induced plaintiffs to enter into a contract which the defendant had no intention of performing, together with a claim that the defendant breached the contract, involves a single wrong or injury. An award of damages for both fraud

and breach of contract would be an improper duplication of remedies.

A party cannot recover damages twice for the same injury simply because he has two legal theories. *Walker v. Signal Cos.,* 84 Cal. App. 3d 982, 149 Cal. Rptr. 119 (1978). If there is some separate basis for the fraud and breach of contract claims, plaintiff may recover on both, *Channell v. Anthony,* 58 Cal. App. 3d 290, 129 Cal. Rptr. 704 (1976). *Cf. Walker v. Signal Cos., supra; Fines v. West Side Implement Co.,* 56 Wn.2d 304, 352 P.2d 1018 (1960). Western Gear did not pay royalties as it promised. That is one wrong or injury to the Kammerers.. The trial judge did not err in refusing damages on both theories.

The judgment is affirmed and the cross appeal is dismissed.

DORE and RINGOLD, JJ., concur.

Reconsideration denied January 8, 1981.

Review granted by Supreme Court April 8, 1981.