[No. 36968.    Department Two.    June 18, 1964.]

EUGENE RUSHING et al., *Respondents*, v. PAUL C. STEPHANUS
*et al., Appellants.**

*Warren Hardy*, for appellants.

*Preston, Thorgrimson, Horowitz, Starin & Ellis* and *Eugene Sage*, for respondents.

FINLEY, J.—Eugene Rushing and his wife (plaintiffs-respondents) commenced this action, asserting fraud and breach of the fiduciary obligation of an agent, and sought the recovery of the commissions which they had paid to Paul Stephanus and wife (defendants-appellants). The defendants were engaged in the mortgage brokerage business under the name of the Prudential Mortgage Company. By amendment, a cause of action for negligence was added respecting certain allegedly excessive loan expenses.

The factual circumstances surrounding most of the transactions of the parties are in sharp dispute. While the plain-

*Reported in 393 P. (2d) 281.

tiff asserts fraud, dishonesty and concealment, the defendant takes the position that he at all times made scrupulous disclosure, and conformed with common business practices. The trial court, sitting without a jury, accepted the version of the facts narrated by the plaintiffs, and this version, supported as it is by substantial evidence, is binding on appeal to this court.

The plaintiff Rushing is a *side-sewer* contractor, and has only a fifth grade education. His wife's formal education ended in the 10th grade. Both were found to have a limited ability to read and understand technical language. Desiring to borrow $1,800 for use in his business, Rushing was referred to the services offered by the defendant Stephanus. At a meeting in Stephanus' office, the Rushings affixed their signatures to the following blank forms: A loan application, a note, a mortgage, and a hold-harmless agreement. The trial court found that these documents were signed under the following circumstances:

" . . . Paul Stephanus told plaintiffs to sign a stack of papers with the loan application on top, and fraudulently misrepresented to plaintiffs that all documents in the stack were duplicate loan applications. Paul Stephanus held his hands on the documents in such a manner that only the signature lines were visible to plaintiffs. Under the loan application . . . [was] the blank mortgage . . . ."

At the aforementioned office meeting, Stephanus told the Rushings that he could secure a first mortgage loan for them at an interest rate of 8 per cent, sufficient in an amount to refinance the pre-existing $3,200 mortgage on the Rushing home and still leave the $1,800 which they wanted to borrow. The Rushings were led to believe that Stephanus himself, as the Prudential Mortgage Company, was to be the lender. No mention was made to them concerning any brokerage commissions to be collected by Stephanus for placing the loan elsewhere.

Armed, not by Colt or Winchester, but with blank mortgages and loan applications signed by the Rushings, and having the appearance of legal propriety, Stephanus set about negotiating a loan which would net the required

amounts to his pigeons and, more significantly perhaps, would yield and pay his commissions and "expenses." To obtain the $5,000 needed to refinance the home mortgage with a balance over of $1,800, Stephanus filled in the application for $6,600, thereby making allowance for the rather startling sum of $1,600, allegedly to cover costs, discounts and his commissions. Possibly it was beside the point that the Rushings only wanted to borrow $1,800 in the first place. This $6,600 figure was then placed on Prudential's "loans available" list, which was mailed to various financial institutions.

It developed that the loan had not been placed by April, and the Rushings, in need of cash, expressed their concern to Stephanus. It was explained that the delay was due to "some problem" with the title to the home. It was suggested that an advance of $1,000 be secured until the loan "went through," and the Rushings went down to Stephanus' office and *signed another stack of papers in blank.* This "advance" was obtained by filling out another blank loan application as a request for a second mortgage loan of $1,650 (carefully leaving $650 to cover expenses) and forwarding it to Stevens-Norton, Inc., an outfit apparently doing a business not unlike that of Stephanus. Stevens-Norton apparently made the loan at the certainly not too timid rate of 10 per cent interest and a 20 per cent discount. Stevens-Norton deducted their discount, Stephanus' commission of $160 on this new "loan," and various minor "expenses," and the Rushings netted $1,091.72 on the $1,650 note and mortgage. Curiously enough, Stevens-Norton, while originally made a defendant in this action, was dismissed by the Rushings for reasons which do not appear in the record. They do not press here any claims against Stevens-Norton under the *usury* statutes of this state or the penalty provisions thereof; consequently, the apparent usury aspects of the matter will not be considered in relation to the issues on this appeal. On the basis of testimony that the $6,600 first mortgage, originally contemplated, could have been placed, in the exercise of

due care and diligence by Stephanus, with a reputable institution by March, or at the latest April, the trial court found that the entire transaction involving this interim second mortgage and the expenses thereof was unnecessary, and the product of actionable negligence.

Finally, in May, Prudential sent an advertising circular to the Eastside Savings & Loan Association, listing the $6,600 first mortgage as "choice," available at 8 per cent interest and a 5 per cent discount. Eastside accepted the loan, forwarding the necessary forms to Stephanus. When Stephanus returned the completed forms to the Eastside bank, he included a letter stating that Prudential held a recorded mortgage which had an unpaid balance of $660 against the Rushing home. This "mortgage" actually was the $660 commission which Stephanus was charging on this loan. There is evidence that Stephanus habitually used this "painless" way of collecting his commissions, and had also used it to collect the $160 commission on the interim loan. By recording a mortgage on the premises, his commission was always paid in the closing transaction under the general escrow instructions to "Pay all record encumbrances against said property," and it never had to be mentioned as a separate charge where the client would be sure to see it.

Meanwhile—back at the ranch—when the dust finally settled, the Rushings found themselves in a position which can be summarized somewhat as follows: They refinanced the pre-existing mortgage and received $1,560 for a total received value of $4,760 out of a new debt of $6,600. In other words, the debt of the Rushings had been increased $3,400 to receive $1,560. Except for the $330 discount at the Eastside bank and about $125 in real estate taxes on the home, the $1,840 cost was entirely attributable to the activities of Stephanus on "behalf" of his principals. The trial court summarized and awarded as damages the costs attributable to Stephanus, which may be summarized as follows:

In regard to $1,650 loan—(Not including the $160 commission received by defendants)

| | | |
|---|---:|---:|
| Title insurance and sales tax | $ 28.08 | |
| Mortgage recording fee | 6.00 | |
| Deed fee | 3.00 | |
| Discount | 330.00 | |
| Escrow fee and sales tax | 31.20 | |
| Interest | 82.50 | $480.78 |

In regard to commissions and charges received by defendants from plaintiffs

| | | |
|---|---:|---:|
| Commission on $1,650 loan | $160.00 | |
| Commission of $6,600 loan | 660.00 | |
| Loan closing fee | 25.00 | |
| Appraisal fee | 25.00 | |
| $35 charge | 35.00 | 905.00 |
| TOTAL | | $1,385.78 |

The $905 item represents the amount received by Stephanus in his capacity as agent. This the trial court held recoverable because of a breach of the duty of loyalty which an agent has to his principal. The $480.78 item represents the expenses of the Rushings, including interest, in reference to the "interim" second mortgage loan, held recoverable as proximately caused by the negligence of Stephanus. The trial court correctly awarded judgment on both items.

As noted above, the entire $905 received by Stephanus as agent is forfeit, including the commissions and the $85 in "fees," only a few dollars of which were ever shown to have been passed on to third parties. The record is ample to support the findings of fraud and breach of an agent's fiduciary duty. The obtaining of signatures by trickery, misrepresentation and concealment of mortgages and fees, which appear staggering from the standpoint of amount alone, are all elements found by the trial court on substantial evidence. The broker must fully reveal the nature and extent of his fees to the client for whom he acts, and the failure to do so will render him liable. *Mele v. Cerenzie* (1952), 40 Wn. (2d) 123, 241 P. (2d) 669. Where

there has been a breach of the fiduciary relationship in addition to the partial concealment of fees, the rule is stated as follows in the Restatement, Agency (2d) § 469:

"An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned."

To like effect, see *Kane v. Klos* (1957), 50 Wn. (2d) 778, 314 P. (2d) 672.

Stephanus is likewise liable, as a loan broker, for the expenses imposed upon his clients as a result of his failure to exercise due diligence or care; *Mattieligh v. Poe* (1960), 57 Wn. (2d) 203, 356 P. (2d) 328. In the present case, the item of $480.78 represents the loss caused when Stephanus failed to exercise reasonable diligence in obtaining the first mortgage as agreed, but also affirmatively acted to secure an expensive interim loan which the trial court found was totally unnecessary. This interim loan was arranged at a 20 per cent discount, a 10 per cent interest rate, and a penalty for a pay-off prior to maturity, despite the fact that Stephanus knew it was to be paid off with the proceeds of the $6,600 loan as soon as possible. Reviewing the above evidence, we cannot say that there was insufficient evidence of negligence to support the finding of the trial court.

We have considered appellants' additional assignments of error and find them to be likewise without merit.

The contentions of the appellants are without merit, and the judgment of the trial court should be affirmed. It is so ordered.

HILL, WEAVER, and HAMILTON, JJ., and DENNEY, J. Pro Tem., concur.