[No. 37886.   Department One.   February 10, 1966.]

JOHN A. FARRELL et al., *Respondents and Cross-appellants,* v. J. R. SCORE, *Appellant.**

*Reported in 411 P.2d 146.

*Watson & Codd* and *Donald E. Watson,* for appellant.

*John L. Hay,* for respondents and cross-appellants.

BARNETT, J.† — Plaintiffs, John and Virginia Farrell, brought this action to rescind and cancel a promissory note and a conditional sales contract assigned as security, and also for the return of $140 which had been paid on the note. Defendant counterclaimed for the unpaid balance of the note. Judgment was entered canceling the note and assignment, from which defendant appeals. Plaintiffs cross-appeal from the same judgment, insofar as it did not include an order for the return of the $140.

This lawsuit is based on alleged fraudulent misrepresentations made by defendant broker concerning the financial condition of a purchaser which he had procured for plaintiffs. The trial court found that false representations had been made, entitling plaintiffs to the cancellation of the note representing defendant's commission, and of a contract assignment given as security for the note. Defendant broker challenges this finding, which is set out as follows:

Finding of fact No. 5:

Plaintiffs were induced to enter into said contract with Mr. and Mrs. Robinson and to execute said note and assignment of contract to defendant by misrepresentations made to them by defendant concerning the financial responsibility of the Robinsons and the manner in which defendant's commission was to be paid. Defendant breached his duty to plaintiffs as a fiduciary, failed to exercise towards them the utmost good faith, and deceived the plaintiffs as to the financial responsibility of the purchasers and the manner in which his commission was to be paid. The evidence established all of the elements of fraud against defendant:

1. A representation of an existing fact;
2. Its materiality;
3. Its falsity;
4. The speaker's knowledge of its falsity or ignorance of its truth;

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

5. His intent that it should be acted on by the person to whom it is made;

6. Ignorance of its falsity on the part of the person to whom it is made;

7. The latter's reliance on the truth of the representation;

8. His right to rely upon it;

9. His consequent damage.

A complete summary of the facts is justified. The record shows them to be substantially as follows. In the year 1960, plaintiffs, husband and wife, were the owners and operators of a laundromat business. At that time they entered into a listing agreement with defendant, a business and real-estate broker, for the sale of the laundromat. This agreement expired before a buyer could be found. In 1961, defendant brought to plaintiffs' place of business one Robinson, and inquired if the laundromat was still for sale. Plaintiffs replied that it was. Shortly thereafter, defendant informed plaintiffs that Robinson wanted to buy, and that he had $3,000 to pay down. Plaintiffs replied that $3,000 was not enough; that they wanted, as down payment, one-third of the total $20,000 purchase price. In response, defendant said that he would look to Robinson for his commission (which was to be 10 per cent of $20,000), so that, by receiving $3,000 from Robinson, and not having to pay defendant's commission, plaintiffs would be getting most of the one-third down payment that they desired. Plaintiffs agreed that, if Robinson paid $3,000, and if defendant would get his commission from Robinsion, they would sell.

In discussing Robinson with plaintiffs. defendant represented that the purchaser had a good job with Standard Oil Company, which he would retain after he purchased the laundromat, while his wife would manage the newly-acquired business. Defendant further represented that Robinson had sufficient stocks and bonds in Standard Oil to "buy out" plaintiffs if he so desired, but that he did not want to dispose of these investments at that time.

Relying upon these statements made by defendant, plaintiffs accepted Robinson's offer. On April 6, 1961, an earnest

money agreement was executed by the parties. Among its provisions was one wherein plaintiffs promised to pay defendant a $2,000 commission. Plaintiff John Farrell testified that he did not read this document when he executed it, being assured by defendant that the acquisition of his signature was "just a formality." That very day, plaintiff John Farrell departed for Alaska, not to return until June. He left his wife a power of attorney to conclude the sale transaction on his behalf. On April 18th, Robinson signed a conditional sales contract for the balance of the purchase price. It obligated him to make payments of $120 a month to plaintiffs. Robinson also assumed some prior debts of plaintiffs. On May 1st, plaintiff Virginia Farrell, acting for herself and her absent husband, executed a promissory note, with defendant as payee, in the amount of $2,000. At the same time, she assigned the conditional sales contract to defendant as security for the note.

Robinson went into immediate possession and began to operate the business. The various documents and instruments relating to the sale transaction were deposited in a bank, which collected the monthly installment payments made by Robinson. Out of each $120 payment, the bank applied $20 to the $2,000 promissory note owned by defendant. Robinson made seven payments, totaling $700, out of which sum defendant received $140 on his note. Unable to perform further, Robinson negotiated with plaintiffs for relief from his obligations under the sales contract. As a result of these negotiations, plaintiffs and Robinson executed an agreement of "satisfaction," whereby the sales contract was rescinded, the laundromat business returned to plaintiffs, and all payments previously made became forfeited.

The trial court found by substantial evidence that defendant had consented to the rescission of the sales contract. At no time prior to the institution of this suit did defendant demand further payment on the $2,000 note.

After the rescission, plaintiffs discovered that the recorded conditional sales contract beclouded the title to their business, and that the representations which defendant had

made concerning Robinson's financial ability had been untrue. This suit resulted.

Defendant had told plaintiffs that Robinson would continue to hold his position with Standard Oil after purchasing the laundromat. In fact, defendant had known that Robinson could raise the $3,000 needed for the down payment only by resigning from his Standard Oil position, and thereby receiving an annuity benefit of nearly $2,000. While defendant had told plaintiffs that Robinson owned enough stocks and bonds to buy them out, if he desired, he had known that Robinson possessed only a small amount of stock in the corporation, worth no more than $320. Defendant had assured plaintiffs that he would receive his commission from Robinson so that they could receive their one-third down payment. But later, at the behest of defendant, Mrs. Farrell executed a promissory note obligating plaintiffs to pay the commission.

It is contended by defendant that the representations which he made regarding Robinson's financial condition do not constitute actionable fraud. We disagree.

In the case of *Nailor v. Western Mortgage Co.,* 54 Wn.2d 151, 338 P.2d 737, 72 A.L.R.2d 938 (1959), we held that misrepresentations of another's financial condition may, where the essential elements of fraud are present, constitute remedial fraud. See, also, *Jorgensen v. Albertson,* 129 Wash. 686, 225 Pac. 639 (1924). The duties and obligations of a broker to his employer are essentially those of an agent required to exercise fidelity and good faith toward his principal in all matters that fall within the scope of his employment. *Westerbeck v. Cannon,* 5 Wn.2d 106, 104 P.2d 918 (1940). The law exacts of his agent the utmost fidelity to his principal. *Mele v. Cerenzie,* 40 Wn.2d 123, 241 P.2d 669 (1952); *Karle v. Seder,* 35 Wn.2d 542, 214 P.2d 684 (1950). It is the broker's duty to give to his principal such information as he may have of the prospective purchaser's financial situation. If the broker has no knowledge thereof, it is his duty to disclose this fact to the principal, so that the latter may investigate it. 12 Am. Jur. 2d

*Brokers* § 89 (1964). The existence of this duty owed the principal by his broker entitles the principal to rely on such representations as the broker may make to him regarding the financial ability of the intending purchaser.

There is sufficient evidence to support the trial court's finding that all nine elements of actionable fraud were present here. Plaintiffs' obvious damage is their assumption of liability on the face of the note.

■ Defendant next contends that he became entitled to his commission as soon as he procured a purchaser who was accepted by the principal and with whom the principal entered into a binding and enforceable contract, citing *Dryden v. Vincent D. Miller, Inc.*, 56 Wn.2d 657, 354 P.2d 900 (1960), and other cases cited therein. These cases are not apposite, as they did not involve what we have here, *i.e.*, affirmative misrepresentations on the part of the broker. In answering a similar argument in *R. A. Poff & Co. v. Ottaway*, 191 Va. 779, 785, 62 S.E.2d 865 (1951), it was said:

> The plaintiff broker says that since its undertaking was to procure a purchaser who was ready, willing and able to buy the property on the vendors' terms, that undertaking was fulfilled and it was entitled to its reward when the vendors accepted the purchaser and entered into a valid and enforceable contract with him.
>
> But this is only a partial statement of the rule, for it is well settled that in such circumstances the vendor's acceptance of the purchaser . . . *must not have been induced through the broker's misrepresentation as to the purchaser's financial situation* . . . . (Italics ours.)

Thus, the rule upon which defendant relies does not apply in this case. Plaintiffs are therefore entitled to the cancellation of the note and the contract assignment.

■ We come now to the merits of the cross-appeal. It has been shown that, while occupying the position of a fiduciary, defendant committed acts of actionable fraud against his principal. We hold that this conduct precludes him from retaining the fruits of his endeavors, and that plaintiffs are entitled to recover the $140 which had been paid on the note. In *Mattieligh v. Poe*, 57 Wn.2d 203, 205,

356 P.2d 328 (1960), where plaintiff sued his broker for damages, it was alleged that, as a result of the defendant broker's negligence, a written contract had to be rescinded. We said at that time:

If the negligence, ignorance, stupidity, incompetence or *fraud* of a real-estate broker causes the rescission of a sale negotiated by him, one of the items of the principal's damage is the commission paid. (Italics ours.)

The rule is stated in 12 Am. Jur. 2d *Brokers* § 168, at 908:

The faithful discharge of his duties is a condition precedent to any recovery upon the part of a broker for the services he has rendered his principal. A broker who has . . . by false representation, . . . induced his principal to enter into a contract, . . . forfeits his right to a commission.

In *Fox v. Cohen,* 34 D.C. App. 389 (1910), a broker induced his principal to enter into a real-estate contract with another by telling him that the prospective purchaser was "all right in every respect." The purchaser proved to be financially irresponsible and refused to perform. The principal-vendor brought suit against the broker for the return of the paid commission. It was contended by the broker that, when an agent procures a purchaser on the principal's terms, and the latter accepts the purchaser, then the agent is entitled to his compensation. In rejecting this contention, the court, after reciting that perfect good faith was required on the part of an agent to his principal, said at 393:

We are not to be understood as intimating that the appellant [the broker] acted in bad faith; doubtless, he fully believed that the purchaser intended to comply. But the proposition of law for which he contends would offer a temptation to careless or unprincipled agents to make sales to irresponsible bidders at high prices, without any reasonable expectation that the terms of sale would be complied with or could be enforced.

In *Kane v. Klos,* 50 Wn.2d 778, 789, 314 P.2d 672 (1957), we had occasion to hold that a corporate fiduciary, by breaching his trust, forfeited all right to compensation. There the faithless fiduciary was allowed to keep a sum

of $17.50 only because this amount was conceded to him by the plaintiffs. This court said:

> This was a suit in equity to require a faithless fiduciary to disgorge his ill-gotten gains. Public policy forbids compromise with a swindler. The fiduciary who engages in such conduct forfeits all right to compensation. . . . It must be made unmistakably clear that when one assumes the duties of a fiduciary, the law will exact of him not the best-policy kind of honesty, but "a punctilio of honor the most sensitive."
>
> . . . .
>
> The secret profit was $15,200. There is no finding that Klos is entitled to any credit. However, the . . . [plaintiffs] concede $17.50, and for that reason only, it may be deducted . . . .

This court has recently held that a faithless fiduciary may not retain compensation even for properly performed services. In *Rushing v. Stephanus,* 64 Wn.2d 607, 393 P.2d 281 (1964), a mortgage broker misrepresented the nature and extent of his incurred expenses in negotiating a loan for his principal-borrower. Holding that the principal could recover *all* the compensation previously paid the broker, we followed the rule stated in the Restatement (Second), Agency § 469 at 399:

> An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned.

We again choose to follow this rule. Defendant's fraudulent conduct constitutes a willful and deliberate breach of his contract of service. Plaintiffs are entitled to recover from him the $140 which had been paid on the note.

In his reply brief, defendant has tendered an argument based on laches. The record does not disclose that this argument was ever presented to the trial court. We shall not consider it here. *State v. Miller,* 66 Wn.2d 535, 403 P.2d 884 (1965).

The judgment is modified granting to plaintiffs the $140 which had been paid on the note. As so modified, the judgment is affirmed.

ROSELLINI, C. J., OTT, HUNTER, and HALE, JJ., concur.

