*In re* Melvin G. **HEIDE** and M. Larayne Heide, husband and wife, Debtors.

Stimson BULLITT, Trustee in bankruptcy for Melvin G. Heide and M. Larayne Heide, husband and wife, Plaintiff–Appellee,

v.

MADING KING COUNTY ENTERPRISES, INC., a Washington corporation, Defendant–Appellant.

No. 89–35546.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1990.

Decided Oct. 1, 1990.

---

Patrick George Toulouse, Wettrick, Toulouse, Lirhus & Hove, Seattle, Wash., for defendant-appellant.

Kary L. Krismer, Williams, Kastner & Gibbs, Bellevue, Wash., for plaintiff-appellee.

Before HUG, NELSON and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Stimson Bullitt, the trustee in the underlying bankruptcy action in this case, moved for summary judgment to avoid Mading King County Enterprises, Inc.'s (Mading's) interest in a real estate contract based on Mading's failure to perfect their interest under Article 9 of the Uniform Commercial Code (UCC) as enacted in Washington state (hereinafter Article 9). The bankruptcy court granted the trustee's motion for summary judgment, and the district court affirmed. Mading appeals, claiming that Article 9 does not apply to this transaction and the district court erred in granting summary judgment on its constructive trust claim. We review the bankruptcy court's grant of summary judgment, as affirmed by the district court, de novo. *Nash v. Kester,* 765 F.2d 1410, 1412 (9th Cir.1985).

## FACTUAL BACKGROUND

In 1974, Mading sold an apartment building to David and Frances Matson (Matson) under a real estate contract (the contract) that resulted in this dispute. The debtors in this bankruptcy action, Melvin and LaRayne Heide, owned and operated Capretto and Clark, Inc. (Capretto). Capretto acted as the broker for the contract. Capretto, the broker for Mading, executed a separate guarantee, guaranteeing Matson's performance under the contract, providing that if Matson defaulted, Capretto would perform Matson's duties under the contract. However, the guarantee agreement also gave Capretto the option of buying out Mading's interest in the contract in the event of Matson's default.

In 1977, the Matsons defaulted on the contract.[1] Capretto exercised its option under the guarantee agreement and purchased Mading's interest in the contract instead of assuming Matson's duties under the contract. Pursuant to the option, Mad-

---

1. Through a series of later conveyances, the vendee's interest came to rest in Robinson–Hoffman, a partnership. Robinson–Hoffman's right to present possession of the property is not disputed.

ing executed an assignment of the contract, transferring his vendor's interest and also legal title to Capretto. In exchange, Capretto gave Mading a promissory note for the outstanding balance due on the contract. Capretto's promissory note was secured by a deed of trust given by Capretto to Mading encumbering Capretto's newly acquired legal title. Mading claims that the deed of trust also encumbers the vendor's interest in the contract assigned to Capretto. Mading did not file a UCC financing statement to perfect its security interest in the contract assigned to Capretto. Mading did, however, record the deed of trust as a real property conveyance.

After Capretto exercised its option in 1977, Mading and Capretto occupied new roles in the transaction. Mading switched from holding the legal title to the property and a vendor's interest in the contract to holding a deed of trust encumbering Capretto's legal title to the property. Capretto, instead of being a guarantor, became the successor vendor under the contract and was also obligated under the promissory note to pay Mading for the purchase price of his newly acquired vendor's interest in the contract.

In 1978, Capretto executed a deed, conveying its interest in the property to the Heides, which was properly recorded. Both Capretto and the Heides filed for bankruptcy in 1984. The petitions were consolidated. The trustee moved to avoid Mading's interest in Capretto's vendor's interest in the contract on the ground that Mading failed to perfect its interest as required by Wash.Rev.Code 62A.9–102 (adopting UCC 9–102). The bankruptcy court granted the trustee's motion for summary judgment, avoiding Mading's interest, and the district court affirmed. Mading appeals.

## DISCUSSION

### A. Application of Article 9

■ Initially, Mading argues that the filing and perfection requirements of Article 9 do not apply to the assignment to Capret-

to of the contract and the promissory note given in return. We find that Article 9 does apply to the security interest received by Mading.

Revised Code Washington 62A.9–102 states that Article 9 applies to all transactions, except as otherwise provided, that are "intended to create a security interest in personal property ...." Mading contends that Article 9 does not apply because the interest it received from Capretto was one in real, not personal, property. However, the Washington Supreme Court's decision in *Freeborn v. Seattle Trust & Savings Bank,* 94 Wash. 2d 336, 617 P.2d 424 (1980), precludes this argument.

■ In *Freeborn,* the Washington Supreme Court held that a vendor's interest in a contract for the sale of real estate has both real and personal property components. *Id.,* 617 P.2d at 426. The vendor's right to receive payments under the contract is a personal property right; therefore, Article 9 governs the assignment of a vendor's right to receive those payments. *Id.,* 617 P.2d at 427. Thus, where the vendor in a real estate contract executes a deed and seller's assignment of real estate contract by which he or she (a) assigns a contract and (b) conveys the real estate, the assignee-grantee must both file pursuant to Article 9 and record pursuant to the real property recording statutes. *Id.,* 617 P.2d at 429.

■ In construing this transaction and applying Washington law, *Freeborn* controls. Pursuant to the option, Mading assigned its vendor's interest and deeded title to Capretto. In return, Capretto gave Mading a promissory note and a deed of trust encumbering its newly acquired legal title. When Capretto executed the deed of trust to Mading to secure the promissory note, the deed of trust only encumbered the bare legal title and did not encumber the contract.[2] Mading argues that the deed of trust also created a security interest in Capretto's vendor's interest in the contract.

---

**2.** The legal title described in the deed of trust explicitly states that the property is subject to   the real estate contract.

Even if we accept Mading's argument that the deed of trust acted as a security agreement to encumber the vendor's right to receive payments, Capretto's right to receive payments under the contract was a personal property interest that must be perfected under Article 9 by filing a financing statement. *Id.*, 617 P.2d at 429. Thus, because Mading failed to file under Article 9, the bankruptcy court properly allowed the trustee to avoid Mading's alleged security interest in Capretto's vendor's interest. *See id.*, 617 P.2d at 429.[3]

Mading contends that Capretto received only bare legal title under the option, and that equitable ownership remained in Mading. Mading argues that the trustee cannot avoid Mading's interest if Mading holds the equitable title in the real estate and Capretto holds bare legal title. Mading relies on 11 U.S.C. § 541(a)(1) and 541(d) (1988) for this proposition. However, we do not reach this issue because we find that Capretto holds more than bare legal title.

Mading argues that Capretto obtained only bare legal title because Capretto acted as a middleman through which payments could pass to Mading and title to the Matsons. However, this is not a valid characterization of the transaction. By exercising the option, Capretto acquired legal title and Mading's interest in the contract which included the right to collect payments under the contract. Thus, Capretto was not a mere middleman but the successor vendor who obtained substantially more than bare legal title under the option.

The bankruptcy court correctly determined that the transaction fell within the scope of Article 9. Since Mading did not file a financing statement to perfect its interest, as required by Wash.Rev.Code 62A.9-301(1)(b), its interest is subordinate to any interest of the debtor's estate asserted by the trustee in bankruptcy in his status as a judgment lien creditor under 11 U.S.C. § 544 (1988). *Freeborn*, 617 P.2d at

429. The bankruptcy court correctly granted the trustee summary judgment, allowing the trustee to avoid Mading's unperfected security interest.

**B. Constructive Trust**

Alternatively, Mading alleges that the Heides fraudulently induced it to not file a financing statement, and thus a constructive trust should be imposed on the Heides' interest in the property. Based on the principle that "creditors should not benefit from fraud at the expense of those who have been defrauded," bankruptcy law permits imposition of a constructive trust in favor of the defrauded party. *In re American Coin & Currency, Ltd.*, 767 F.2d 1573, 1576 (9th Cir.1985).

To determine whether actual fraud was committed by the Heides, we must look to Washington state law. *Id.* To state a fraud claim under Washington law, the plaintiff must show that the speaker had knowledge of the information's falsity or must have been ignorant of the information's truth. *Farrell v. Score*, 67 Wash.2d 957, 411 P.2d 146 (1966). Mading notes that all documents were drafted by the Heides' attorney and that the Heides promised to perfect Mading's interest. While these facts may indicate that the Heides *should* have known that the Madings were required to file a financing statement, they do not support the claim that the Heides indeed had such knowledge. Because Mading bears the burden of proof as to each element of fraud, its failure to make a sufficient showing to establish even one of the elements of fraud properly resulted in summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986).

AFFIRMED.

---

**3.** Mading also argues that because the option was negotiated as part of the original real estate contract, the exercise of the option should be construed to be a continuation of the sale, not a creation of a security interest. However, the option involved an agreement between different parties than were involved in the contract of sale. Capretto and Mading signed the option; Matson and Mading signed the real estate contract. Thus, we find the option to be a separate agreement.