**John M. BRAZIER III, Plaintiff,**

v.

**SECURITY PACIFIC MORTGAGE INC. a Washington Corporation; Nu-West Mortgage Corp., a Washington Corporation; Robert E. Sherwood, individually and as a shareholder and officer of Nu West Mortgage Corp. and of Security Pacific Mortgage Inc., Defendants.**

**No. C02–449Z.**

United States District Court,
W.D. Washington,
at Seattle.

Feb. 6, 2003.

---

Ari Brown, Scott Sayre, Brown Sayre PS, Seattle, WA, for Plaintiff.

John Long, Issaquah, WA, for Defendants.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on Plaintiff's motion for partial summary judgment, docket no. 35.

### BACKGROUND

Defendant Robert Sherwood, the owner of Nu–West Mortgage Corp. ("Nu–West"), and Security Pacific Mortgage, Inc. ("Security Pacific"), brokered two residential mortgage loans on behalf of Plaintiff, John M. Brazier III.

In August 2001, Plaintiff contacted Mr. Sherwood about a loan to refinance his home. Sherwood Decl., docket no. 43, ¶ 3. Plaintiff indicated that he had bad credit. *Id.* Instead of refinancing, Plaintiff negotiated the purchase of a home through a real estate agent. Brazier Decl., docket no. 39, ¶ 2. Plaintiff put a $10,000 deposit on the house. *Id.* Plaintiff agreed that he would forfeit his deposit if the sale did not close by October 25, 2001. *Id.*

On September 21, 2001, Plaintiff contacted Mr. Sherwood about a loan for the purchase of the home. Sherwood Decl., docket no. 43, ¶ 5. Plaintiff provided Mr. Sherwood with a copy of his credit report generated several months earlier. Brazier Decl., docket no. 39, ¶ 3. Mr. Sherwood suggested various loan packages, took the information required for a loan application, and obtained an updated credit report on September 21, 2001. Sherwood Decl., docket no. 43, ¶ 5; Brazier Decl., docket no. 39, ¶ 4. Plaintiff asserts that the loan application was complete by September 21, 2001. Mr. Sherwood states that Plaintiff actually applied for a loan on October 5, 2001. Brown Decl., docket no. 36, Ex. 16 (Brazier Dep. at 167).

On October 5, 2001, Mr. Sherwood contends he faxed Plaintiff two good faith estimates. Sherwood Decl., docket no. 43, ¶ 7. One was with a 10% down payment resulting in a loan amount of $365,400.00 that would require mortgage insurance. The other was with 20% down for a loan amount of $300,000, and would not require mortgage insurance. *Id.*, Ex. 2. The good faith estimate for the $300,000 loan did not contain a clause indicating compensation to Nu–West from the lender in the amount of 1.5%. *Id.* ¶ 7, Ex. 2. The good faith estimate for the $365,400 loan did contain the mortgage broker fee clause. *Id.* Plaintiff decided to take the loan with the lower amount and signed documents pertaining to the $300,000 loan. *Id.* ¶ 6; Brown Decl., docket no. 36, Ex. 6. Plaintiff did not sign, and says he was not sent, the copy of the good faith estimate for the $365,400 loan. Brazier Decl., docket no. 38, ¶ 5; Brown Decl., docket no. 37, Ex. 7.

Plaintiff's loan was registered with Ohio Savings Bank on October 5, 2001. Brown Decl., Ex. 4. According to Defendants, because Plaintiff did not want to pay origination fees, Mr. Sherwood priced the loan products so as to obtain compensation for Nu–West directly from the lender. Sherwood Decl., docket no. 43, ¶ 9. Nu–West would receive a yield spread premium of $4,500 in connection with the loan.[1] Plaintiff claims he had no knowledge that Nu–West would receive such a payment if Plaintiff did not pay origination fees. Brazier Decl., docket no. 39, ¶ 9. On October 5, 2001, Mr. Sherwood provided Plaintiff with a Good Faith Estimate and Truth in Lending Disclosure Statement that Plaintiff signed. Brazier Decl., docket no. 39, ¶ 5. The documents showed a 1–year Adjustable Rate Mortgage ("ARM") at an interest rate of 7%. Brown Decl., docket no. 36, Ex. 6. Neither document referred to a yield spread premium or other payment from the lender. *Id.*

On October 12, 2001, John Brazier, Sr. (Plaintiff's father) spoke with Mr. Sherwood regarding the loan he was brokering for Plaintiff. Brazier Sr. Decl., docket no. 38, ¶ 2; Sherwood Decl., docket no. 43, ¶ 10. Mr. Brazier Sr. testifies that he and Mr. Sherwood came to an understanding that he would broker a 30–year fixed mortgage loan at an interest rate of 6.75%. Brazier Sr. Decl., docket no. 38, ¶ 3. Mr. Brazier Sr. sent a fax to memorialize the conversation. Brown Decl., docket no. 36, Ex. 17 (Brazier Dep. at 68–72); Ex. attached to Brazier Sr. Decl., docket no. 38.

Mr. Sherwood claims that no such agreement for a 30–year, 6.75% fixed interest loan was reached. Sherwood Decl., docket no. 43, ¶ 10. Mr. Sherwood did not follow up with a new good faith estimate at this rate and did not arrange these loan terms with a lender.

Plaintiff continued to discuss longer loan repayment terms and lower interest terms with Mr. Sherwood. Brazier Decl., docket no. 39, ¶ 6. Mr. Sherwood explained that to eliminate the prepayment penalty in the loan, the lender would increase the interest rate. Sherwood Decl., docket no. 43, ¶ 15. On October 19, 2001, Plaintiff decided to obtain a no income verification loan with no prepayment penalty. Sherwood Decl., docket no. 43, ¶ 15. Mr. Sherwood contacted the lender to obtain the interest rate on a 1–year ARM, as well as on a "3/1" ARM.[2] *Id.* The interest rate for the 1–year ARM was 8.5% and the rate for the 3/1 ARM was 8%. *Id.* Mr. Sherwood forwarded to Plaintiff a good faith estimate showing a 3/1 ARM at a rate of 8% and informed him that nothing lower was available for a term of three years or longer. *Id.,* Ex. 7. This good faith estimate contained small print stating: "A mortgage broker fee of 1.500%—1.500% is being paid by the lender for this transaction." Sherwood Decl., docket no. 43, Ex. 7. Plaintiff claims he did not understand the significance of this language and Mr. Sherwood did not explain it. Brazier Decl., docket no. 39, ¶ 8. Because Plaintiff would forfeit his $10,000 deposit if he did not close on the house the following Thursday, he ac-

---

**1.** A yield spread premium or "rebate" lets the borrower pay less at the time of settlement in exchange for a higher interest rate and thus higher payments over the life of the loan. The broker pays the up front closing costs and recoups these costs by selling the mortgage to an investor at a higher price, reflecting the higher interest rate. The price that the investor pays the broker for this higher rate loan is the yield spread premium. *See* 64 Fed.Reg. 10080, 10081 (March 1, 1999).

**2.** A 3/1 ARM offers a fixed interest rate for the first three years of the loan, and then turns into a 1–year ARM for the remaining life of the loan. *See More Than Half of New Mortgages Have Adjustable Rates,* Federal Housing Finance Board Reports, 1994 WL 7191798 (December 27, 1994).

cepted the 3/1 ARM at an 8% interest rate. Brown Decl., Ex. 17 (Brazier Dep. at 103). Mr. Sherwood and Nu–West collected a $4,500 yield spread premium from Ohio Savings Bank. Brazier Decl., docket no. 43, ¶ 8.

To leverage the first mortgage, Mr. Sherwood also brokered a second mortgage for Plaintiff. Mr. Sherwood also told Plaintiff he could obtain a second mortgage for $65,400.00 at no cost (*i.e.*, no title insurance, escrow fees, etc.) at 9% interest. Sherwood Decl., docket no. 43, ¶ 16. Mr. Sherwood brokered the loan with Security Pacific as the lender, and told Plaintiff that 9% was the best Security Pacific could do. Brazier Decl., docket no. 39, ¶ 11. Mr. Sherwood did not inform Plaintiff that he was the owner of Security Pacific, and did not provide a written disclosure revealing the affiliation. *Id.*

Plaintiff claims that Defendants' failure to disclose the $4,500 yield spread premium violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* In addition, Plaintiff claims that Mr. Sherwood failed to disclose that he owns Security Pacific, and that his companies were acting as both broker and lender in Plaintiff's second mortgage loan, Plaintiff also brings claims for unjust enrichment, breach of fiduciary duty, violations of the Washington Mortgage Broker Practices Act, RCW 19.146 *et seq.*, and violations of the Washington Consumer Protection Act, RCW 19.86 *et seq.*

Plaintiff seeks partial summary judgment on several issues. First, Plaintiff asks the Court to find that Defendants violated TILA and RESPA disclosure requirements, that these violations of federal law violate the Washington Mortgage Broker Practices Act and the Washington Consumer Protection Act, and that the yield spread premium Nu–West collected

was not reasonably related to work performed. Plaintiff also asks the Court to determine that Nu–West and Mr. Sherwood owed Plaintiff a fiduciary duty as Plaintiff's mortgage broker. Finally, Plaintiff asks the Court to apply the doctrine of Spoliation of Evidence and make inferences in Plaintiff's favor because of allegedly missing documents from Nu–West's loan files.

## DISCUSSION

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991). For purposes of the motion, reasonable doubts as to the existence of material facts are resolved against the moving party and inferences are drawn in the light most favorable to the opposing party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000).

### A. RESPA & TILA Disclosure Requirements

Plaintiff claims that Defendants violated RESPA and TILA in three ways. First, Plaintiff argues that Defendants did not timely disclose the yield spread premium Nu–West collected. Second, Plaintiffs claim that when Defendants did reference

the yield spread premium before closing, the disclosure was inadequate. Third, Plaintiffs claim that Defendants did not disclose the affiliation between Mr. Sherwood as the mortgage broker, and Security Pacific as the lender of the second loan.

### 1. Timeliness of Disclosure

Under RESPA and TILA, a creditor or broker must provide a good faith estimate of costs, fees, and other terms of a mortgage before the earlier of: (1) the extension of credit, or (2) three business days after the creditor receives the consumer's written application for a residential mortgage loan. 12 U.S.C. § 2604(c); 15 U.S.C. § 1638(b)(2); 12 C.F.R. § 226.19(a)(1).

▮▮▮ There is a question of fact regarding whether disclosure was timely because the parties disagree as to the date of Plaintiff's loan application. For purposes of a motion for summary judgment, all inferences must be made in the light most favorable to the nonmoving party. Therefore, the Court denies Plaintiff's motion for summary judgment on this ground.

### 2. Adequacy of Disclosures

Under RESPA, a good faith estimate must contain estimates of certain charges. 24 C.F.R. § 3500.7(c). These charges include payments to mortgage brokers:

> For all items except for those paid to and retained by the Lender, the name of the person or firm ultimately receiving the payment should be shown. In the case of "no cost" or "no point" loans, the charge to be paid by the lender to an affiliated or independent service provider should be shown as P.O.C. (Paid Outside of Closing) and should not be used in computing totals. Such charges also include indirect payments or back-funded payments to mortgage brokers that arise from the settlement transaction.

. . . . .

Lines 808–811 are used to list additional items payable in connection with the loan including a CLO Access fee, a mortgage broker fee, fees for real estate property taxes or other real property charges.

24 C.F.R. § 3500, App. A, section L.

Plaintiff claims that the disclosures in the October 5, 2001 good faith estimate that he signed were inadequate because there was no disclosure of the 1.5% mortgage broker fee to Nu–West. Brown Decl., docket no. 36, Ex. 6. Mr. Sherwood admits that the good faith estimate that Plaintiff signed did not reference the 1.5% broker fee. Sherwood Decl., docket no. 43, ¶ 7.

▮▮▮ The Court finds as a matter of law that the disclosures in the October 5, 2001 signed good faith estimate were not adequate under TILA and RESPA because there was no disclosure of the mortgage broker fee. 24 C.F.R. § 3500.7. The Court notes that there are questions of fact regarding the damages, if any, Plaintiff suffered as a result of the inadequate disclosure because Plaintiff did not ultimately accept a loan with the signed October 5, 2001 estimate terms.

▮▮▮ Plaintiff claims that the yield spread premium disclosures made in the October 19, 2001 good faith estimate were inadequate because the language stating, "A mortgage broker fee of 1.500%— 1.500% is being paid by the lender for this transaction," did not sufficiently inform the borrower. Plaintiff claims that the estimate failed to disclose that the 1.5% percent referred to the full principal of the loan, to whom the lender would pay the fee, whether the fee would be used to defer the borrower's costs, and why the lender was paying the fee. The requirements for the contents of a good faith estimate in 24 C.F.R. § 3500, App. A, sec-

tion L do not mandate disclosures of the kind Plaintiff believes is necessary. Therefore, the Court denies summary judgment in favor of Plaintiff on this ground.

### 3. Disclosure of Affiliation

RESPA requires that a broker disclose any affiliated business arrangement with any other service provider to whom business is referred. 24 C.F.R. § 3500.15(b)(1). RESPA defines "affiliated business arrangement" as:

> [A]n arrangement in which (A) a person who is in a position to refer business incident to or a part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest of more than 1 percent in a provider of settlement services; and (B) either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider.

12 U.S.C. § 2602(7).

■ Plaintiff argues that Mr. Sherwood failed to disclose his affiliated business arrangement with Security Pacific in connection with the second mortgage loan because he is the owner and sole officer of Security Pacific. Defendants do not claim that they disclosed the business affiliation, but argue that the RESPA requirements for disclosure of business affiliations do not apply because Security Pacific does not make federally related mortgage loans. 24 C.F.R. §§ 3500.2, 3500.5. Mr. Sherwood represents that Security Pacific does not loan more than $1,000,000 annually, that his accounts and deposits are not insured by or assisted by any federal government agency, and that his accounts are never sold to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or any other financial institution. Sherwood Decl., docket no. 5, ¶ 17. Plaintiff presents no evidence to show that Security Pacific is regulated by a federal agency. Thus, there is a question of fact as to whether Defendants' nondisclosure violated RESPA. Therefore, the Court denies Plaintiff's motion for summary judgment on this ground.

### B. Washington Mortgage Brokers Practices Act & Consumer Protection Act

■ Washington law specifically incorporates TILA and RESPA disclosure requirements. RCW 19.146.030(2). The Washington Mortgage Brokers Practices Act ("MBPA") also requires that a mortgage broker provide the borrower with an itemization or good faith estimate of all fees and costs the borrower is to pay in connection with a residential mortgage loan. RCW 19.146.0201(6), 19.146.030. Failure to make timely disclosures under the MBPA, or federal statutes such as TILA and RESPA, constitutes an unfair or deceptive act or practice in violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86 et seq. RCW 19.146.100. Thus, the Court finds that the inadequate disclosures in the October 5, 2001 signed good faith estimate violated the Washington MBPA and CPA. The Court notes that there are questions of fact regarding any damages Plaintiff suffered as a result of the inadequate disclosure.

### C. Yield Spread Premium Not Reasonably Related to Work Performed

■ Plaintiff argues that the yield spread premium was not reasonably related to the value of the services performed under the Department of Housing and Urban Development's ("HUD") 1999 State-

ment of Policy. *LaCasse v. Washington Mut., Inc.,* 198 F.Supp.2d 1255 (W.D.Wash.2002); *Bjustrom v. Trust One Mortgage,* 178 F.Supp.2d 1183 (W.D.Wash. 2001). Courts apply a two-part analysis in determining whether the yield spread premium was reasonably related to work performed. First, courts look at whether goods or facilities were provided, or services performed by the broker in the transaction. *Bjustrom,* 178 F.Supp.2d 1183, 1194. Second, courts look to see if total compensation is reasonably related to the total set of goods or facilities actually furnished, or services performed. *Id.* at 1195. HUD issued a policy statement in 2001 expressly rejecting the examination by courts of whether services were actually provided specifically for the yield spread premium. *Id.* Instead, courts are to look to whether a particular charge for a mortgage deviates from market rates in the area for similar services. *Id.*

There are genuine issues of material fact as to whether the yield spread premium was reasonably related to the work performed and was in line with market rates. Thus, the Court denies summary judgment in favor of Plaintiff on this ground.

### D. Breach of Fiduciary Duty

█ Plaintiff claims that mortgage brokers owe fiduciary duties of disclosure, loyalty, good faith, and due care to borrowers for whom they seek to obtain financing, citing *State v. WWJ Corp.,* 138 Wash.2d 595, 604, 980 P.2d 1257 (1999), and *Rushing v. Stephanus,* 64 Wash.2d 607, 611, 393 P.2d 281 (1964). However, *WWJ Corp.* does not support Plaintiff's position because *WWJ Corp.* involved a mortgage broker who was handling client funds, which is not at issue here. 138 Wash.2d at 599, 980 P.2d 1257. *Rushing* can be distinguished because it involved a breach of fiduciary duty when a mortgage broker caused plaintiffs with limited education to sign blank documents that were

fraudulently misrepresented as duplicate copies of loan applications. 64 Wash.2d at 608, 393 P.2d 281. Under the Washington MBPA, a mortgage broker has a duty to disclose in writing "all fees and costs that the borrower is required to pay in connection with obtaining a residential mortgage loan ... [including] the fee or fees which inure to the benefit of the mortgage broker and other such disclosures as may be required by rule." RCW 19.146.030. However, no law requires a mortgage broker to negotiate for a borrower to obtain a loan at the best rate from a lender.

The Court finds that Plaintiff has not established a fiduciary relationship between Plaintiff and Defendants. Plaintiff and Defendants entered into a contract that specifically provided that Nu–West was *not* Plaintiff's agent. Ex. 3 to Sherwood Decl., docket no. 43. The Court does not find that there is a factual basis for finding an implied-in-law fiduciary duty in this case. Accordingly, the Court denies Plaintiff's motion for summary judgment on this ground, without prejudice.

### E. Spoliation of Evidence Presumption

Plaintiff seeks an inference under the doctrine of spoliation of evidence that documents missing from Nu–West's file would support his claims. The Court declines to apply the doctrine of spoliation of evidence on the record before the Court. The Court will reconsider this issue at trial.

### CONCLUSION

For the forgoing reasons, Plaintiff's motion for partial summary judgment is GRANTED IN PART as follows:

1. There is no genuine issue of material fact that Defendants Robert E. Sherwood, Nu–West Mortgage Corporation, and Security Pacific Mortgage, Inc. failed to disclose the fact that Nu–West would receive a yield spread premium in exchange for Plaintiff's

payment of an inflated interest rate in violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, in connection with the October 5, 2001 Good Faith Estimate. Brown Decl., docket no. 36, Ex. 6.

2. The violation of the TILA and RESPA disclosure requirements relating to the October 5, 2001 signed good faith estimate constitute a violation of the Washington Mortgage Broker Practices Act, RCW 19.146 *et seq.*, and an unfair or deceptive business practice under the Washington Consumer Protection Act, RCW 19.86 *et seq.*

3. There is no material issue of fact that Defendants failed to disclose the existence of an affiliated business arrangement between Mr. Sherwood and Security Pacific.

4. There is a material issue of fact as to whether the yield spread premium paid to Nu–West was reasonably related to the services performed for Plaintiff in violation of RESPA.

5. Plaintiff has not established that a fiduciary relationship existed between Defendants and Plaintiff.

The motion for summary judgment is DENIED except as provided above.

IT IS SO ORDERED.