Catherine ANDERSON, Plaintiff,

v.

WELLS FARGO HOME MORTGAGE, INC., Defendant.

No. C02–5480 RJB RBL.

United States District Court, W.D. Washington.

May 1, 2003.

Aryeh Y Brown, Law Office of Ari Brown, Seattle, WA, for Catherine Anderson, plaintiff.

Mark Alan Rossi, Carllene M Placide, Lane Powell Spears Lubersky, Seattle, WA, for Wells Fargo Home Mortgage Inc, defendant.

## ORDER ON SUMMARY JUDGMENT MOTIONS

LEIGHTON, District Judge.

### Summary

This matter comes before the court on cross motions for partial summary judgment. [Dkt. Nos. 48 and 53].

The plaintiff, Anderson, seeks a ruling as a matter of law that defendant Wells Fargo Home Mortgage Company did not properly disclose to her the "Yield Spread Premium" ("YSP") paid to it by her Lender, Long Beach Mortgage, for brokering a loan at a higher interest rate than was otherwise available. She claims such a disclosure was not made at all, and that even the disclosure Wells Fargo claims to have made was insufficient under a variety of state and federal laws governing the residential lending process. She specifically seeks a ruling as a matter of law that she has established the "deceptive act or practice" element of her Washington Consumer Protection Act ("CPA") claim (Chapter 19.86 RCW) based on one or more of these failures. She also apparently intends to argue that the failure to properly disclose the YSP is a "per se"

violation of the public interest, but that is not raised in her motion, and her Reply specifically outlines that she seeks only a ruling on the "unfair or deceptive act" element of her CPA claim.

Anderson also asks the Court to rule that she is entitled to a jury instruction specifically requiring an inference, from the fact Wells Fargo admittedly "shredded" its copy of the Good Faith Estimate ("GFE") disclosure it claims to have made, that that disclosure would not contradict her claim that she did not in fact receive it.

In its Motion, Wells Fargo seeks a ruling dismissing Anderson's claims under the Fair Housing Act, *if and to the extent* those claims are based on any alleged agency relationship between Long Beach and Wells Fargo. (Anderson responds by arguing that no such agency relationship is required, which may be correct, but she apparently does not dispute that any agency-based claims should be dismissed based on her prior settlement with Long Beach.).

Wells Fargo also seeks summary dismissal of Anderson's Home Ownership and Equity Protection Act ("HOEPA") claims, based on that Act's one-year limitations period. It similarly seeks the dismissal of Anderson's Truth In Lending Act ("TILA") claim, based on its one-year limitations period Wells Fargo also claims that TILA only applies to "creditors," and that it was not a creditor as that term is defined in the Act, as a matter of law.

Wells Fargo seeks the dismissal of Anderson's Washington Mortgage Broker Protection Act ("WMBPA") claim, arguing that as an affiliate or subsidiary of a commercial bank (Wells Fargo Bank, N.A.) doing business under the laws of Washington or the United States, it is exempt from the Act. For this reason, Wells Fargo also seeks a ruling that Anderson's CPA claim cannot be based on any alleged violation of the WMBPA, either for purposes of establishing an unfair or deceptive act, or for a

"per se" finding that the public interest is impacted by that act.

Finally, Wells Fargo seeks a dismissal of Anderson's claim that it owed her a fiduciary duty as her broker under the factual circumstances of the case.

These various issues will be discussed in order, though they are necessarily interrelated in some cases.

## 2. Discussion

### 1. Summary Judgment Standard

The parties agree upon the standards that govern this case. These standards are well-settled and familiar. Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir.1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

### 2. Wells Fargo breached its duty to disclose the YSP to Anderson within three days of receiving her loan application

It is clear that at least RESPA unambiguously requires lenders (and, to the extent they are not the lender's exclusive agent, mortgage brokers) to disclose to a loan applicant a variety of information about the proposed loan, including the fact and amount of any YSP to be paid outside closing to the broker by the lender. *See* 12 U.S.C. § 2604(c), 24 CFR § 3500.7(b), (c). This information must be disclosed no later than three days after the loan application is submitted.

It is also true that TILA has similar requirements, at least as they relate to the creditor, and that the ubiquitous "Good Faith Estimate" routinely provided to would-be borrowers is often designed to

satisfy the disclosure requirements of both statutory schemes. *See* 12 CFR § 226.18.

Wells Fargo does not seriously dispute that disclosure is required. Instead, it argues that Anderson has not asserted a RESPA claim, and that TILA applies only to "creditors" (and that it is not a "creditor" under TILA). It also argues that a disclosure *was* made, in the disclosure of the interest rate on the loan (9.8% instead of the 9.3% it would have been absent the YSP), and that a disclosure *was* made in the closing documents related to the rescinded April 26, 2001 loan transaction—prior to Anderson's "application" in connection with the subject transaction, which closed in May, 2001.

■ As an initial matter, the court finds that based on the undisputed facts, Wells Fargo did not make the RESPA-required disclosure of the YSP. Whether or not any Good Faith Estimate [1] was provided to Anderson, Wells Fargo does not contend that that document actually disclosed the fact and amount of the YSP as required by RESPA and the HUD regulations promulgated under it. The claim that the YSP could or should have been deduced from the disclosed interest rate (or the interest rate and the disclosed finance charges, or the origination fee) simply ignores [2] the

requirement of a factual, intelligible disclosure.

■ Similarly, RESPA requires the disclosure to be made within three days of the application, on the Good Faith Estimate, not at closing when it may be literally or at least practically too late for the borrower to use the information. The closing documents for the rescinded April 2001 loan do contain a cryptic reference to the YSP, but that is not the loan at issue. More importantly, RESPA (and TILA) require an "up front" disclosure, at the application stage—not the closing stage—of the loan process.

■ Furthermore, the fact that Anderson did not specifically assert a RESPA claim does not mean that she cannot rely on Wells Fargo's violation of that Act to support her CPA claim. No authority for such a ruling is offered, and it does not make intuitive sense. Anderson's claim is based on the CPA, not the RESPA, the statutory violation she asserts as the basis for the "deceptive act" is the failure to make the RESPA-required disclosure. In any event, Anderson does not move for summary judgment on a "RESPA claim." Her motion for a ruling as a matter of law that the failure to provide the RESPA-required disclosure [3] within

---

1. This is apparently a hotly disputed factual question, but it is not material to the resolution of this issue, given Wells Fargo's failure to allege that the GFE met the requirements of RESPA.

2. It also appears that, as a lay person would conclude, the origination fee and the YSP are two different sums of money changing hands at closing. Disclosing the former does nothing to disclose that there will be a similar payment to the broker for "signing up" the borrower at a higher rate than would otherwise be available. It is true that the borrower does not pay the YSP, but it is also true that where, as here, that fee is not used to pay closing costs—including the broker's fee—the borrower obtains no benefit from her agree-

ment to pay a higher interest rate over the life of the loan.

3. Anderson's claim that the TILA was also violated, as a basis for both a TILA claim and a separate CPA claim, is more difficult. If the only flaw in the TILA claim was that it was time barred, that would not mean that she could not assert the violation as a basis for her (timely) CPA claim. The successful assertion of a statute of limitations does not mean that the violation did not occur, it means that the claim based on it is stale. Where, as here, the actual claim asserted—the CPA—has a longer limitations period, the violation may still be used to support the timely claim. However, given the court's ruling on the applicability of the RESPA violation to the CPA

three days of her loan application was a deceptive act, for purposes of her Washington CPA claim, is granted. Anderson retains the burden of proving the remaining elements of her CPA claim at trial.

**3. Anderson is not entitled to an instruction that the jury should infer from the destruction of the loan documents that they would not contradict her claim she did not receive them.**

■ Anderson seeks a ruling that, based on the "spoliation of evidence" by Wells Fargo, the jury should be instructed to infer that the loan documents, if produced, would not contradict her claim that she did not receive a proper GFE. Again, given the Court's ruling on the RESPA violation (and given that Wells Fargo does not appear to claim that the YSP was properly, fully disclosed in the since-destroyed GFE) this may be a moot point.

In short, the fact that Wells Fargo arguably had a duty to maintain these records does not necessarily lead to the conclusion that its destruction of them was in bad faith. Instead, it claims without contradiction that its practice was to do so after closing. The jury is, of course, free to draw its own inference from Wells Fargo's inability to produce the documents it will perhaps claim that it provided. But the destruction of the documents is not, as the defendant points out, substantive evidence Anderson's Motion on this issue is **denied**.

**4. Anderson's agency-based FHA claims have been released.**

■ Wells Fargo's motion for dismissal of Anderson's FHA claim, if and to the extent it is based on a principal/agency relationship between it and Long Beach Mortgage, is granted. Anderson's response on this issue emphasized that no such agency relationship is required to

sustain an FHA claim. This may be correct, and if and to the extent she can maintain such a claim directly against Wells Fargo, the claim remains. But in light of the enforced settlement of her claims against Long Beach, any agency-based claims have been released, and are dismissed from this case.

**5. Anderson's TILA and HOEPA claims are time barred.**

■ Both TILA and HOEPA contain clear one-year statutes of limitations. Anderson's loan closed in May 2001. In June 2001, she complained to her lender that the loan was not what she expected. She sued and settled, prior to commencing this action. Anderson did not assert her TILA or HOEPA claims against Wells Fargo until September, 2002—more than a year after her loan closed, and more than a year after she first complained about its terms.

To avoid the consequences of the passage of time, Anderson seeks to employ the doctrine of equitable tolling, arguing that she did not realize that she had a claim against her mortgage broker until she spoke to a lawyer in November 2001. However, it is clear that the YSP was disclosed to her on the closing documents in May 2001. And while she may not have fully realized what that $3400 "P.O.C." charge meant at that time, there is no real argument that Wells Fargo "concealed" anything from her after closing. Nor is there any credible claim that she was prevented from timely asserting her rights, or that she did so in the wrong forum. *See,* for example, *U.S. v. Midgley,* 142 F.3d 174, 179 (3rd Cir.1998). Finally, Anderson had consulted a lawyer well within the statutory period. She did not assert the instant claims until she had asserted and settled

---

claim, this conclusion may not impact the case. The continuing viability of the "stand

alone" TILA claim is discussed in connection with Wells Fargo's motion, below.

her timely claims against her lender. There is no basis for equitable tolling of the one-year limitations period.

Wells Fargo's Motion for the summary dismissal of these claims on statute of limitations bases is **granted.**

**6. Wells Fargo's substantive liability as a "creditor" under TILA cannot be resolved on summary judgment.**

Wells Fargo also claims that it is substantively outside the ambit of TILA based on the fact that it is not a "creditor" as that term is used in the Act. The first portion of 15 U.S.C. § 1602(f) defines the term "creditor" as "a person who both (1) regularly extends consumer credit and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable[.]" Wells Fargo does not fall within this definition, it was a mortgage broker, not the lender in this case. Anderson's debt was not payable to it at any time. Wells Fargo cites several cases holding that an arranger of credit is not a "creditor" subject to TILA's disclosure requirements. *See*, for example, *Robey–Harcourt v. Bencorp Financial Co. Inc.*, 212 F.Supp.2d 1332, 1334 (W.D.Ok.2002).

These cases do not, however, discuss the portion of 15 U.S.C. § 1602(f) cited by Anderson, which further provides. "Any person who originates 2 or more mortgages referred to in subsection (aa) of this section in any 12–month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter."

This is a stand-alone definition, unrelated to the definition cited by Wells Fargo and the cases it relies upon. Wells Fargo argues that only the portion of subsection (f) it cites is applicable; the rest, including

the portion relied upon by Anderson, relates (only to) open ended credit transactions. This is not clear from the language of the Act.

Nor is it at all clear from the evidence whether Wells Fargo originates 2 or more of the mortgage loans described (in some detail) in 15 U.S.C. § 1602(aa). That subsection provides in part:

(aa)(1) A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, **other than a residential mortgage transaction**, a reverse mortgage transaction, or a transaction under an open end credit plan, if-[.]

(Emphasis added)

■ The remainder of the section describes a variety of dwelling-secured credit transactions. If Wells Fargo did in fact originate 2 or more such loans in any 12 month period, it is a "creditor" for purposes of TILA[4]. The resolution of that question cannot be derived from the evidence before the court. The defendant's motion for an order dismissing Anderson's TILA claims, based solely on the fact it does not extend credit and was not the person to whom her debt was initially payable, must be denied. Wells Fargo's potential status and liability as a "creditor" under TILA is not restricted to the portion of the definition upon which it relies. Of course, the Plaintiff must demonstrate the Act's applicability at trial.

**7. Wells Fargo's liability under WMBPA cannot be resolved on summary judgment.**

Wells Fargo claims that it is exempt from the WMBPA as a subsidiary of a

---

**4.** And this definition would apply, even if the transaction at issue was not one of the transactions described in 15 U.S.C. § 1602(aa).

commercial bank, under RCW 19.146.020(1)(a). It is apparently undisputed that Wells Fargo is a subsidiary of Wells Fargo Bank N.A., and that that entity does business under the laws of Washington and the United States relating to commercial banks. As with the TILA claims, the parties dispute the applicability of exemption and exceptions to it. The relevant language is found in RCW 19.146.0201.

It is a violation of this chapter for a loan originator, mortgage broker required to be licensed under this chapter, or mortgage broker otherwise exempted from this chapter under RCW 19.146.020(1)(d) or (f) in connection with a residential mortgage loan to: [listing a variety of acts].

Wells Fargo claims it is exempt under a section (RCW 19.146.020(1)(a)) that is not then excepted from the exemption under RCW 19.146.0201. Again, however, there are other possible exceptions that are not discussed and which might apply. Here, for example, "loan originators" are plainly subject to the requirements of RCW 19.146.0201. This is true, it seems, even if they might otherwise be exempt under RCW 19.146.020(a)(1). "Loan originator" is a defined term. Under RCW 19.146.010(10), it means "a person employed, either directly or indirectly, or retained as an independent contractor by a person required to be licensed as a mortgage broker, or a natural person who represents a person required to be licensed as a mortgage broker, in the performance of any act specified in subsection (12) of this section."

This definition is of no particular use as it is used in RCW 19.146.0201. A loan originator—apparently excepted from the exemption—is in fact only an employee of a mortgage broker required to be licensed. If a broker, however, is "required to be licensed", he is already *not exempt* from

RCW 19.146.020. The exception to the exemption was excluded from the exemption in the first instance. To add to the confusion, both Anderson and Wells Fargo seem to concede without discussion that Wells Fargo did in fact "originate" the subject loan. *See, for example*, Wells Fargo's Opposition to Plaintiffs' Motion for Summary Judgment at 3 ("Wells Fargo Originates a loan with Long Beach") [Dkt. No. 57]. Thus, by the terms of the "exception," Wells Fargo is subject to the various requirements and prohibition of that statute—not because its exemption under RCW 19.146.020(1)(a) is not effective, but because it concedes it is a loan originator.

■ The parties have cited no cases construing this exemption, and the court has found none. However, It is true that the very purpose of the WMBPA is to "promote honesty and fair dealing with citizens and to preserve the public confidence in the lending and real estate community." See RCW 19.146.050. It would be an absurd result if a mortgage broker, by virtue of his affiliation with a large commercial bank, was exempt from the prohibitions against, among other things, employing schemes to defraud borrowers (RCW 19.146.0201(1)). This incongruity is particularly troublesome where, as here, the broker also claims exemption from the TILA governing lenders, on the basis that he is only a broker and not a "creditor."

The court will not summarily dismiss Anderson's claims that Wells Fargo's conduct violated the WMBPA. Wells Fargo's motion is **denied**. Similarly, there will be no ruling as a matter of law as to the applicability of any alleged violation of WMBPA to Anderson's CPA claim.

**8. Anderson's Fiduciary Duty claim, to the extent it is based on a "special relationship" must be proven at trial.**

■ Finally, Wells Fargo seeks an Order dismissing Anderson's claims based

on her allegation that it owed her a fiduciary duty. The court agrees that the mortgage broker relationship itself does not give rise to such a duty. Anderson claims that, based on the facts as she has described them, including the fact that Wells Fargo approached her, her illness, her reliance on Mr. Zakovics, and the relative position of the parties, she has established facts supporting a factual finding of a "special relationship" giving rise to fiduciary or similar duties. Anderson is entitled to all favorable inferences from the evidence submitted on this issue. She will, of course, carry the burden of proof at trial, but Wells Fargo's Motion for Summary dismissal of Anderson's Fiduciary Duty claim is **denied**. *See Tokarz v. Frontier Fed. Sav. & Loan Ass'n,* 33 Wash.App. 456, 460, 656 P.2d 1089 (1982), *Brazier v. Security Pacific Mortgage Inc.,* 245 F.Supp.2d 1136 (W.D.Wash.2003).

### CONCLUSION

Therefore, it is hereby

**ORDERED** that

1. Anderson's Motion for an Order establishing the existence of the "unfair or deceptive act" element of her CPA claim is GRANTED,

2. Anderson's Motion for an Order regarding any inference to be drawn from Wells Fargo's inability to produce her loan file is DENIED,

3. Wells Fargo's Motion for dismissal of Anderson's FHA claims, if and to the extent they are based on an agency relationship with Long Beach, is GRANTED,

4. Wells Fargo's Motion for dismissal of Anderson's HOEPA and TILA claims as time-barred is GRANTED,

5. Wells Fargo's Motion for dismissal of Anderson's TILA claims on the basis that it is not a "creditor" as a matter of law under that Act is DENIED,

6. Wells Fargo's Motion for dismissal of Anderson's WMBPA claim (and for a ruling that it cannot support a CPA claim) on the basis that it is exempt from that Act as a matter of law is DENIED,

7. Wells Fargo's Motion for dismissal of Anderson's breach of fiduciary duty claim is DENIED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.